LEE E. COOMBS AND JUDY B. COOMBS, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos:                          Filed December 15, 1976.

970–74, 1027–74, 1035–74, 1118–74, 1161–74, 1163–74, 1193–74, 1234–74, 1237–74, 1241–74, 1290–74, 1291–74, 1292–74, 1294–74, 1295–74, 1297–74, 1298–74, 1301–74, 1302–74, 1309–74, 1312–74,

---

[1] Cases of the following petitioners are consolidated herewith: Gerald Dean Carr, docket No. 1027–74; Wardell Baggett, docket No. 1035–74; Ronald D. Jacobs and

1316–74, 1324–74, 1327–74, 1329–74, 1339–74, 1357–74, 1369–74, 1372–74, 1388–74, 1389–74, 1390–74, 1405–74, 1408–74, 1418–74, 1422–74, 1455–74, 1466–74, 1488–74, 1494–74, 1585–74, 2935–74, 3618–74, 5805–74, 6845–74, 7090–74, 7194–74, 7290–74, 7508–74, 7595–74, 7774–74, 8220–74, 8485–74, 8611–74, 1661–75, 2405–75, 4437–75, 4817–75, 4818–75, 4819–75, 4820–75, 5384–75, 7021–75, 8304–75, 8914–75, 8982–75, 8983–75, 10157–75, 10158–75.

Joyce Jacobs, docket No. 1118–74; Jess C. Cauble, docket No. 1161–74; Gerald E. Stark and Ruby M. Stark, docket No. 1163–74; Wesley L. Smith and Nadine M. Smith, docket No. 1193–74; Gilbert Montoya and Lugarda Montoya, docket Nos. 1234–74 and 7774–74; Oliver W. Sturtevant and Barbara Sturtevant, docket Nos. 1237–74 and 7508–74; Jack R. North and Yvonne A. North, docket No. 1241–74; Walter E. Griffith and Katheryn Griffith, docket No. 1290–74; William R. Henderson, docket Nos. 1291–74 and 8983–75; Leon H. King and Leola King, docket No. 1292–74; Phillip J. Toombs and Beverly Toombs, docket Nos. 1294–74 and 5384–75; Lonnie L. Nickerson and Lorna M. Nickerson, docket Nos. 1295–74 and 8220–74; William F. Cleghorn and I. Jane Cleghorn, docket Nos. 1297–74 and 8485–74; Angela M. Thayer, docket No. 1298–74; Jean M. Thayer, docket No. 1301–74; Darrell L. Glass, docket Nos. 1302–74 and 7090–74; Estate of Richard J. Johnson, by Aline Johnson, Executrix, and Aline Johnson, docket No. 1309–74; Charles A. Miesch and Ruth Miesch, docket No. 1312–74; Ronald V. Hicks and Janie K. Hicks, docket No. 1316–74; Billy J. Sloat, docket No. 1324–74; John W. Cavanee, docket No. 1327–74; Janet R. Jefferson, docket No. 1329–74; Anthony A. Marinucci and Katherine Marinucci, docket Nos. 1339–74 and 4437–75; John M. Sabo, docket No. 1357–74; Leonard E. Ramsey, docket Nos. 1369–74 and 4818–75; John D. Bustamente and Yolanda Bustamente, docket Nos. 1372–74 and 4817–75; Ernest Saxton, docket Nos. 1388–74 and 4819–75; Jack E. Janne and Dee Anne Janne, docket Nos. 1389–74 and 1661–75; Ray G. Cook and Maxine S. Cook, docket No. 1390–74; Russell Weaver and Irma B. Weaver, docket No. 1405–74; Estate of Harley R. Roberts, Jr., Deceased, and Dorothy Roberts, Administratrix, and Dorothy Roberts, docket No. 1408–74; Glenn C. Handley and Denzell E. Handley, docket No. 1418–74; John T. Fouts and Maxine

*Norman H. McNeil,* for the petitioners.
*Douglas K. Cook,* for the respondent.

DAWSON, *Chief Judge:* In these consolidated cases respondent determined deficiencies in the Federal income taxes of petitioners as follows:

| Petitioners | Docket No. | Year | Deficiency |
|---|---|---|---|
| Lee E. Coombs and Judy B. Coombs..... | 970–74 | 1971 | $336.47 |
| | 7021–75 | 1973 | 325.20 |
| Gerald Dean Carr.................................... | 1027–74 | 1970 | 820.50 |
| | | 1971 | 516.20 |
| Wardell Baggett........................................ | 1035–74 | 1971 | 805.41 |
| Ronald D. Jacobs and Joyce M. Jacobs | 1118–74 | 1972 | 625.00 |
| Jess C. Cauble .......................................... | 1161–74 | 1970 | 612.67 |
| | | 1971 | 407.10 |
| Gerald E. Stark and Ruby M. Stark[2].... | 1163–74 | 1971 | 583.66 |
| | | 1972 | 460.37 |
| Wesley L. Smith and Nadine M. Smith...................................................... | 1193–74 | 1970 | 340.96 |
| Gilbert Montoya and Lugarda Montoya................................................ | 1234–74 | 1971 | 386.67 |
| | 7774–74 | 1972 | 355.49 |

---

Fouts, docket No. 1422–74; Charles D. McKnight and Alois E. McKnight, docket Nos. 1455–74 and 8611–74; Charles E. Wilson and Patricia R. Wilson, docket Nos. 1466–74 and 4820–75; Earl E. Oliver and Wanda J. Oliver, docket Nos. 1488–74 and 8982–75; John M. Wallace and Rosetta Wallace, docket No. 1494–74; Herbert W. Martens and Lillian M. Martens, docket No. 1585–74; William L. Finneran, docket No. 2935–74; Lewis Frank Terry and Merle K. Terry, docket No. 3618–74; Mario D. Colapelle, docket No. 5805–74; Thomas B. Harrell, Jr., and Clemmie J. Harrell, docket No. 6845–74; John I. Manganaro, docket No. 7194–74; Robert B. Worts and Sue Ann Worts, docket No. 7290–74; Narcena Taylor, docket No. 7595–74; Harold M. Dittmer, docket Nos. 2405–75 and 8304–75; John R. Eyraud and Jo Anne Eyraud, docket No. 8914–75; James V. Bittner and Maryann Bittner, docket No. 10157–75; Clyde F. Flowers and Mary G. Flowers, docket No. 10158–75.

[2] This case also involves a claimed overpayment of $583.66 in 1971 and $460.37 in 1972.

| Petitioners | Docket No. | Year | Deficiency |
|---|---|---|---|
| Oliver W. Sturtevant and Barbara Sturtevant | 1237–74 | 1970 | 416.34 |
|  | 7508–74 | 1972 | 419.31 |
| Jack R. North and Yvonne A. North | 1241–74 | 1970 | 1,036.47 |
|  |  | 1971 | 589.85 |
| Walter E. Griffith and Katheryn Griffith | 1290–74 | 1970 | 557.26 |
|  |  | 1971 | 589.30 |
| William R. Henderson[3] | 1291–74 | 1970 | 671.46 |
|  |  | 1972 | 675.07 |
|  | 8983–75 | 1973 | 301.42 |
| Leon H. King and Leola King | 1292–74 | 1970 | 854.36 |
|  |  | 1971 | 606.66 |
| Phillip J. Toombs and Beverly Toombs | 1294–74 | 1970 | 106.70 |
|  |  | 1971 | 406.90 |
|  | 5384–75 | 1972 | 444.40 |
| Lonnie L. Nickerson and Lorna M. Nickerson | 1295–74 | 1970 | 471.87 |
|  | 8220–74 | 1972 | 210.95 |
|  |  | 1973 | 572.97 |
| William F. Cleghorn and I. Jane Cleghorn | 1297–74 | 1971 | 396.29 |
|  | 8485–74 | 1972 | 548.44 |
| Angela M. Thayer | 1298–74 | 1970 | 274.53 |
|  |  | 1971 | 295.33 |
|  |  | 1972 | 298.43 |
| Jean M. Thayer | 1301–74 | 1970 | 274.53 |
|  |  | 1971 | 275.08 |
|  |  | 1972 | 275.93 |
| Darrell L. Glass | 1302–74 | 1970 | 1,173.02 |
|  |  | 1971 | 1,031.66 |
|  | 7090–74 | 1972 | 1,111.61 |
| Estate of Richard J. Johnson and Aline Johnson | 1309–74 | 1970 | 279.36 |
|  |  | 1971 | 304.18 |
| Charles A. Miesch and Ruth Miesch | 1312–74 | 1970 | 407.61 |
|  |  | 1971 | 567.63 |
|  |  | 1972 | 570.00 |
| Ronald V. Hicks and Janie K. Hicks | 1316–74 | 1970 | 491.98 |
|  |  | 1971 | 665.52 |
| Billy J. Sloat | 1324–74 | 1970 | 318.88 |
|  |  | 1971 | 274.75 |
|  |  | 1972 | 317.25 |
| John W. Cavanee | 1327–74 | 1970 | 676.22 |
|  |  | 1971 | 590.49 |
| Janet R. Jefferson | 1329–74 | 1970 | 384.12 |
|  |  | 1971 | 322.20 |
|  |  | 1972 | 287.31 |
| Anthony A. Marinucci and Katherine Marinucci | 1339–74 | 1970 | 884.62 |
|  |  | 1971 | 948.63 |
|  |  | 1972 | 983.62 |
|  | 4437–75 | 1973 | 959.14 |

---

[3] This case also involves a claimed overpayment of $1,183.73 in 1970 and $1,165.12 in 1972.

| Petitioners | Docket No. | Year | Deficiency |
|---|---|---|---|
| John M. Sabo............................................ | 1357–74 | 1970 | 634.00 |
|  |  | 1971 | 631.04 |
| Leonard E. Ramsey .................................. | 1369–74 | 1970 | 767.03 |
|  |  | 1971 | 520.57 |
|  | 4818–75 | 1973 | 310.50 |
| John D. Bustamente and Yolanda Bustamente........................................... | 1372–74 | 1970 | 301.60 |
|  |  | 1971 | 425.34 |
|  | 4817–75 | 1973 | 480.62 |
| Ernest Saxton........................................... | 1388–74 | 1970 | 745.05 |
|  | 4819–75 | 1973 | 203.06 |
| Jack E. Janne and Dee Anne Janne..... | 1389–74 | 1970 | 547.96 |
|  | 1661–75 | 1972 | 570.73 |
| Ray G. Cook and Maxine S. Cook......... | 1390–74 | 1970 | 445.60 |
|  |  | 1971 | 463.44 |
| Russell Weaver and Irma B. Weaver ... | 1405–74 | 1970 | 475.49 |
|  |  | 1971 | 421.02 |
| Estate of Harley R. Roberts, Jr., and Dorothy Roberts.................................... | 1408–74 | 1970 | 476.33 |
|  |  | 1971 | 650.56 |
| Glenn C. Handley and Denzell E. Handley .................................................. | 1418–74 | 1972 | 501.84 |
| John T. Fouts and Maxine Fouts .......... | 1422–74 | 1970 | 1,267.76 |
|  |  | 1971 | 1,396.84 |
| Charles D. McKnight and Alois E. McKnight .............................................. | 1455–74 | 1970 | 233.05 |
|  | 8611–74 | 1972 | 185.72 |
| Charles E. Wilson and Patricia R. Wilson ...................................................... | 1466–74 | 1972 | 132.81 |
|  | 4820–75 | 1973 | 295.12 |
| Earl E. Oliver and Wanda J. Oliver ..... | 1488–74 | 1970 | 254.57 |
|  | 8982–75 | 1973 | 391.88 |
| John M. Wallace and Rosetta Wallace. | 1494–74 | 1970 | 191.53 |
| Herbert W. Martens and Lillian M. Martens ................................................... | 1585–74 | 1972 | 428.63 |
| William L. Finneran............................... | 2935–74 | 1970 | 489.95 |
|  |  | 1971 | 624.17 |
| Lewis Frank Terry and Merle K. Terry ...................................................... | 3618–74 | 1971 | 726.62 |
|  |  | 1972 | 71.86 |
| Mario D. Colapelle................................... | 5805–74 | 1972 | 536.60 |
| Thomas B. Harrell, Jr., and Clemmie J. Harrell............................................... | 6845–74 | 1972 | 493.31 |
| John I. Manganaro.................................. | 7194–74 | 1972 | 270.00 |
| Robert B. Worts and Sue Ann Worts ... | 7290–74 | 1970 | 213.45 |
| Narcena Taylor........................................ | 7595–74 | 1972 | 172.80 |
| Harold M. Dittmer .................................. | 2405–75 | 1972 | 811.30 |
|  | 8304–75 | 1973 | 448.84 |
| John R. Eyraud and Jo Anne Eyraud.. | 8914–75 | 1973 | 232.99 |
| James V. Bittner and Maryann Bittner .................................................. | 10157–75 | 1973 | 375.56 |
| Clyde F. Flowers and Mary G. Flowers | 10158–75 | 1973 | 546.26 |

The issues presented for decision are (1) whether the daily allowance which the petitioners receive for each day they report for work at the Nevada test site is includable in income under section 61(a)[4] or excludable from income under section 119; and (2) whether the expenses incurred by the petitioners at the Nevada test site in traveling between their homes in the metropolitan Las Vegas area and the Nevada test site, and other expenses associated with such employment, are deductible as business expenses under section 162.

### FINDINGS OF FACT

Some of the facts have been stipulated and those facts are so found.

All of the petitioners in these consolidated cases filed their Federal income tax returns for the years in issue with the Internal Revenue Service Center at Ogden, Utah.

### I. *General Facts Relating to the Nevada Test Site*

During all or part of each of the years in issue in each of the consolidated cases at least one petitioner was employed at the Nevada test site (hereinafter sometimes referred to as the test site or the site).

The Nevada test site is a portion of the U.S. Air Force's Las Vegas Bombing and Gunnery Range, renamed the Nevada Proving Ground in 1951 when jurisdiction was transferred to the Atomic Energy Commission, now the Energy Research and Development Administration (hereinafter sometimes referred to as ERDA). The test site consists of approximately 1,350 square miles or approximately 850,000 acres located in a remote area of the Nevada desert, surrounded by mountains, with its southernmost boundary, Camp Mercury, located about 65 miles north of Las Vegas, Nev., and its northernmost boundary, area 20, located about 135 miles north of Las Vegas, Nev. The test site has been randomly divided into numbered areas from 1 through 30, and 51.

Although the primary activities at the test site have related to nuclear weapons development tests, use of the site has been expanded to include many other programs and projects. For several years the development and testing of nuclear rocket engines were conducted in area 25, commonly referred to as

---

[4] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

the Nuclear Rocket Development Station (hereinafter sometimes referred to as NRDS).

The test site was originally selected as a nuclear proving ground because it lies in an area of low population and provides a vast, unpopulated land mass which can be secured from access and scrutiny by the public. While both nuclear weapons detonation and the operation of nuclear rocket engines pose potential dangers in terms of possible radiation exposure, that danger is minimized by elaborate safety precautions and the remoteness of the site from major population centers.

Admittance to the test site is restricted to persons having proper clearance credentials because of the classified activities being conducted there. These credentials are checked at one of the three guard stations located at or near the perimeter of the test site on the three access routes before employees or other persons are permitted to enter. The primary entrance, and the one located nearest Las Vegas, is at Camp Mercury in the southeast corner of the test site, approximately 3 miles from U.S. Highway 95 and 65 miles from Las Vegas.

Reynolds Electrical & Engineering Co., Inc. (hereinafter referred to as REECO), has been the prime support contractor at the test site since 1972. REECO is responsible for the maintenance and operation of both the Mercury facilities and the forward areas at the test site. These responsibilities include feeding, housing, industrial safety, fire protection, medical services, purchasing, warehousing, transportation, radiation monitoring services, engineering design and support construction, including the boring of large diameter holes, excavation, and tunneling. As one of the private sector prime contractors, REECO enters into a procurement contract with ERDA, and, in turn, enters into bargaining agreements with various local unions in order to obtain whatever requirements are necessary to fulfill the Government procurement contract. The procurement agreement between the ERDA and REECO during the years here involved provided for the United States to pay REECO its costs plus a fixed fee, generally referred to as a "cost plus" contract.

Edgerton, Germeshausen & Grier, Inc. (hereinafter referred to as E.G. & G.), provides direct technical assistance to ERDA

and the Department of Defense in such areas as timing and firing services, scientific instrumentation, and recording equipment for field support of nuclear test operations.

REECO'S authorization for engagement of labor and craft union workers flows from a cost plus fixed fee procurement contract with the AEC (now ERDA) wherein costs of labor, including on-site travel expense and subsistence are deemed "allowable costs." ERDA specifically authorized REECO to pay numerous subsistence and travel allowances to all private sector workers and employees. During each of the taxable years in question all Federal employees permanently assigned to the test site and all employees of contractors who worked at the test site received, in addition to their regular salary, a daily or per diem allowance for each day they reported for duty at the test site. The amount of the allowance (hereinafter referred to as the test site allowance) was $5 per day when their reporting point was Camp Mercury and $7.50 per day when required to report to any forward area. The employees received this allowance whether or not they actually traveled on a daily basis between Las Vegas and the test site, and regardless of whether they drove, carpooled with someone else, or rode a bus. The per diem allowance is paid only for those days on which the employee reports for work to his assigned duty station. In addition, employees who were members of certain craft unions received an additional travel allowance of $0.50 to $2.50 per day depending on the area of the test site to which the individual employees reported to work.

For the years here involved, the daily allowance and travel pay were included in gross income on the petitioner's W-2 statements. The W-2 statements for private sector employees generally reflected the daily allowance and travel pay as "subsistence" in a lump sum. The W-2 statement for a Federal worker reflected the daily allowance as "official station allowance."

The test site allowance, as it pertains to both private contractor employees and Government employees, is paid without regard to the actual cost incurred by individual employees for transportation or meals and lodging.

During the years in issue the Atomic Energy Commission (AEC) provided subsidized bus transportation from Las Vegas

to ·Camp Mercury and points beyond Camp Mercury. However, construction workers have never been permitted to use the bus service. It is available to Federal and prime contractor personnel only. As a practical matter, use of the bus service is limited to those employees who can fit their working schedule into the bus schedule.

On occasion, several petitioners have worked overtime at the test site. Notice of overtime to construction workers usually arrives thirty minutes prior to the end of their shift. The following table indicates the names of those petitioners who have worked overtime, and the number of days that each worked overtime during 1970, 1971, 1972, and 1973:

| Petitioner | Days worked overtime | | | | Petitioner | Days worked overtime | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1970 | 1971 | 1972 | 1973 | | 1970 | 1971 | 1972 | 1973 |
| Wardell Baggett | — | 11 | — | — | Jack E. Janne | 15 | — | 15 | — |
| Ronald D. Jacobs | — | — | 107 | — | Ray G. Cook | 09 | 10 | — | — |
| Gerald E. Stark | — | 05 | 16 | — | Glenn C. Handley | — | — | 14 | — |
| Wesley L. Smith | 08 | — | — | — | Charles D. McKnight | 06 | — | 04 | — |
| Gilbert Montoya | — | 13 | 04 | — | Charles E. Wilson | — | — | 04 | — |
| Phillip J. Toombs | — | 02 | 10 | — | Earl E. Oliver | 19 | — | 26 | — |
| Lonnie L. Nickerson | 50 | — | 27 | 63 | John M. Wallace | 10 | — | — | — |
| William F. Cleghorn | — | 77 | 85 | — | Herbert W. Martens | — | — | 15 | — |
| Ronald V. Hicks | 13 | 12 | — | — | William L. Finneran | 12 | 10 | — | — |
| John W. Cavanee | 05 | 13 | — | — | Mario D. Collapelle | — | — | 05 | — |
| Anthony A. Marinucci | 56 | 38 | 41 | — | Thomas B. Harrell | — | — | 07 | — |
| John D. Bustamente | 13 | 20 | — | 45 | Robert B. Worts | 13 | — | — | — |

## II. *Facts Relating to Individual Petitioners*

1. *Lee E. Coombs and Judy B. Coombs, docket Nos. 970–74 and 7021–75.*—Petitioners are husband and wife who during the taxable years 1971 and 1973, and at the time of filing their petitions herein, resided at 5512 Eugene Avenue, Las Vegas, Nev.

During the taxable years 1971 and 1973 petitioner Lee E. Coombs (hereinafter referred to as petitioner) was employed by REECO at area 12 of the test site as an electrical technician. His duties involved inspecting electrical coaxial cables. Petitioner was not a member of any union during 1971 or 1973.

Generally on each workday during 1971 and 1973 petitioner traveled from his residence in Las Vegas to his job at area 12. The one-way distance between petitioner's home and area 12

is 108 miles. Any travel which petitioner was required to do after arriving at his reporting point in area 12 was done on company time and in a company vehicle.

Petitioner usually works in area 12 but he has, on occasion, worked in area 20. He has never traveled in his own vehicle to area 20.

During 1971 and 1973 REECO paid petitioner, in addition to his regular salary, $7.50 for each day he reported to area 12 and $5 if he was unable to report to area 12 because of testing. Per diem payments of $1,772.50 in 1971 and $1,617.50 in 1973 were included on petitioner's withholding statements and included in gross income on his Federal income tax returns. Petitioner deducted these amounts as employee business expense on his 1971 and 1973 income tax returns. The deductions were disallowed by respondent.

, On occasion petitioner stayed overnight at the test site when he was required to work overtime. Petitioner worked overtime on 18 days in 1971 and 1 day in 1973. On those occasions petitioner either used a company car to drive home or he stayed overnight in quarters at area 12 at a cost of $1.50 a night.

Petitioner usually rode a Government-subsidized bus from Las Vegas to area 12 and back, at a cost of $1.50 each way.

2. *Gerald Dean Carr, docket No. 1027-74.*—During the taxable years 1970 and 1971 and at the time of filing the petition herein, petitioner resided at 4221 Snead Drive, Las Vegas, Nev.

For part of 1970 and all of 1971 petitioner was employed by REECO at the test site as an operating engineer foreman. He was a member of the International Union of Operating Engineers Local No. 12. His job involved moving drilling rigs from location to location and setting them up for use in drilling holes for underground testing.

While employed at the test site during 1970 and 1971 petitioner traveled each workday from his home in Las Vegas to his reporting point at area 2, a one-way distance of about 108 miles.

REECO paid petitioner $7.50 a day in 1970 and 1971, in addition to his regular pay, for each day he reported to area 2. These payments totaled $1,624.50 in 1970 and $2,337 in 1971, and were included on petitioner's withholding statements and

reported on his 1970 and 1971 Federal income tax returns. On his 1970 and 1971 Federal income tax returns petitioner deducted $3,735.36 and $2,841.12, respectively, as travel expense based on the mileage he traveled in each year in traveling between his home and area 2. These deductions were disallowed by respondent.

Petitioner reported for work directly to area 2 headquarters and traveled from area 2 on company time and in a company vehicle to various work locations within a 58-mile radius of headquarters.

Petitioner's work schedule involved working 8-hour day shifts for 6 days, 8-hour evening shifts for 6 days, and 8-hour night shifts for 6 days, after which the cycle began again. On occasion petitioner was required to work overtime, in which event he usually stayed overnight at the test site rather than return home before his next scheduled shift. He worked overtime on 14 days in 1970 and 16 days in 1971. On these occasions, petitioner generally went to either area 12, Camp Mercury, or control point 1 in area 6, and rented quarters. Sometimes petitioner slept in his truck after working overtime. Petitioner used his own vehicle to get to and from these locations.

Petitioner tried to participate in carpools whenever possible; however, he had to provide his own transportation when required to work overtime.

3. *Wardell Baggett, docket No. 1035–74.*—During the taxable year 1971, and at the time of filing the petition herein, petitioner resided at 701 Rossmoyne, North Las Vegas, Nev.

Petitioner was employed by REECO during 1971 at the test site as a laborer under the construction contract with Laborers Union Local 872, of which he was a member. Petitioner's job involved performing various manual tasks around drilling rigs.

During 1971 petitioner always reported to the same point in area 3, a distance of 90 miles from his residence. His employer provided him with transportation from area 3 to the various points at which he worked. REECO paid petitioner $9 for each day he reported to area 3 in addition to his regular salary, consisting of $7.50 "subsistence" and $1.50 "travel pay." These additional payments totaled $1,965.50 in 1971 and were included on petitioner's withholding statement and included

in gross income on petitioner's 1971 Federal income tax return. Petitioner deducted $2,904 in 1971 as employee business expense, based on the mileage he traveled in that year between his residence in Las Vegas and the test site.

While petitioner occasionally worked overtime, he never stayed overnight at the test site. He drove his own automobile on those days when he knew in advance that he would be working overtime. During the taxable year 1971 petitioner participated in carpools.

4. *Ronald D. Jacobs and Joyce M. Jacobs, docket No. 1118–74.*—Petitioners are husband and wife who, during part of the taxable year 1972, and at the time of filing the petition herein, resided at 3751 South Nellis Boulevard, Las Vegas, Nev.

Petitioner Ronald D. Jacobs (hereinafter referred to as petitioner) was employed by REECO during the taxable year 1972 as a miner under the tunnel contract with Laborers Union Local 872. Petitioner was hired by REECO in October 1970 at the union hall in Las Vegas, and has worked in the tunnels at area 12 of the test site at all times during his employment.

From October 1970 until approximately September 1972, petitioner maintained a residence at Kamas, Utah, and on weekends made roundtrips of about 1,100 miles between Kamas and the test site. Petitioner maintained the residence in Kamas, Utah, during that time because he owned a house in Kamas and his children were attending school there. During this period petitioner would stay at the test site from Monday through Friday evening and return home over the weekend. During the remainder of the taxable year 1972 petitioner and his family lived in Las Vegas, approximately 120 miles from his job location in area 12.

Pursuant to its contract with the Laborers Union, REECO paid petitioner during 1972, $9.50 for each day he reported to area 12 in addition to his regular wages. The $9.50 consisted of $7.50 "subsistence" and $2 "travel pay." These payments totaled $2,459 in 1972, and were included in petitioner's withholding statement and reported on his Federal income tax return for that year. On his 1972 Federal income tax return petitioner deducted $2,459 as travel expense.

During the time petitioner has worked at the test site, including the period following his move to Las Vegas, petitioner has always rented sleeping quarters in a trailer on the test site at area 12, paying $5.25 per week. Since moving to Las Vegas, petitioner has primarily used these quarters for changing clothes and taking showers; however, on those occasions when petitioner felt too tired to drive, he would sleep overnight in his rented quarters.

Once petitioner arrived at the area 12 camp, he would travel to his work location in a vehicle provided by his employer. All of his boots and tools were furnished by REECO at no cost to petitioner.

5. *Jess C. Cauble, docket No. 1161–74.*—During the taxable years 1970 and 1971, and at the time of filing the petition herein, petitioner resided at 300 Tropicana Avenue, Las Vegas, Nev.

Petitioner was employed during 1970 and 1971 by E.G. & G. at the test site as an electronics technician and participated in the calibration of equipment and arming of bombs.

During the years at issue, petitioner usually traveled each workday from his residence in Las Vegas to control point 1 in area 6 at the test site, a distance of about 105 miles. Petitioner left his vehicle at control point 1 and any additional travel was done in a company vehicle.

E.G. & G. paid petitioner, in addition to his regular salary, $7.50 for each day he reported to work at control point 1 during 1970 and 1971. These payments totaled $1,680 in 1970 and $1,575 in 1971 and were included on petitioner's withholding statements and included in gross income on petitioner's Federal income tax returns for those years. The amounts of $1,680 and $1,575 were deducted by petitioner in 1970 and 1971, respectively, as business expenses. The deductions were disallowed by the respondent.

Petitioner's normal work hours at the test site were from 8 a.m. to 4:30 p.m. On many occasions, however, petitioner worked overtime and was paid time and a half or double time. When petitioner worked overtime for 4 hours or less, he usually returned home after work. If he worked overtime for longer than 4 hours, petitioner usually stayed overnight at either control point 1 or area 12.

6. *Gerald E. Stark and Ruby M. Stark, docket No. 1163–74.*—Petitioners are husband and wife and during the taxable years 1971 and 1972, and at the time of filing the petition herein, resided at 1400 Smoke Tree Avenue, Las Vegas, Nev.

During the taxable years 1971 and 1972 petitioner Gerald E. Stark (hereinafter referred to as petitioner) was employed by REECO at the test site as a mechanic and welder. He was employed under a contract with Operating Engineers Union Local No. 12.

Petitioner traveled about 114 miles each workday during 1971 and 1972 from his residence in Las Vegas to his job location in area 12 or area 2. He was paid, in addition to his regular pay, $7.50 for each day he reported to either area 12 or area 2. These payments totaled $1,741.50 in 1971 and $2,198 in 1972 and were included on petitioner's withholding statement and reported on his 1971 and 1972 Federal income tax returns, respectively.

On his 1971 and 1972 Federal income tax returns petitioner deducted $3,071.88 and $2,318.22, respectively, as travel expenses, based on the mileage he traveled back and forth to work.

7. *Wesley L. Smith and Nadine M. Smith, docket No. 1193–74.*—Petitioners are husband and wife who during the taxable year 1970, and at the time of filing the petition herein, resided at 116 Hickory Street, Henderson, Nev.

From January through September of 1970 petitioner Wesley L. Smith (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as a driller. During that period petitioner traveled each workday from his residence in Henderson, Nev., to either area 3, area 7, or area 12 of the test site. REECO paid petitioner, in addition to his regular salary, various amounts ranging from $8.50 to $13, depending on his duty station, for each day he reported to his respective duty station. These payments totaled $1,405.50 in 1970 and were included in petitioner's withholding statement and reported on petitioner's 1970 Federal income tax return. On his 1970 Federal income tax return petitioner deducted $1,405.50 as travel expenses.

8. *Gilbert Montoya and Lugarda Montoya, docket Nos. 1234–74 and 7774–74.*—Petitioners are husband and wife and during the taxable years 1971 and 1972, and at the time of

filing the petitions herein, resided at 2900 Caney, North Las Vegas, Nev.

During the taxable years 1971 and 1972 petitioner Gilbert Montoya (hereinafter referred to as petitioner) was employed by REECO at the test site as a carpenter, under a construction contract with Carpenters Local 1780.

Petitioner traveled each workday, during 1971 and 1972, from his residence in North Las Vegas to the carpentry shop at area 3, a distance of about 95 miles. In 1971 and 1972, REECO paid petitioner, in addition to his regular pay, $8.50 for each day he reported to area 3, consisting of $7.50 "subsistence" and $1 "travel pay." These payments totaled $2,036.50 in 1971 and $1,938 in 1972 and were included on petitioner's withholding statement and reported on petitioner's 1971 and 1972 Federal income tax returns, respectively.

On his 1971 and 1972 Federal income tax returns petitioner deducted $2,037 and $1,938, respectively, as travel expenses. These deductions were disallowed by respondent.

During the years at issue, petitioner participated in a carpool. He never stayed overnight at the test site, nor did he rent quarters there during those years.

Petitioner was employed by REECO in 1966 and has worked at the test site since that time. He was originally employed as a laborer, but joined the Carpenters Union in early 1967. From 1966 to 1968 petitioner reported to work at area 3. During 1968 and 1969 petitioner reported for work at area 19. While working at area 19 petitioner traveled by his own means to area 17 and then rode on a company-provided bus to his work location. From 1970 through 1973 petitioner reported to work at area 3.

Petitioner's work hours have always been from 8 a.m. to 4:30 p.m. He has worked overtime on only a few occasions.

9. *Oliver W. Sturtevant and Barbara Sturtevant, docket Nos. 1237–74 and 7508–74.*—Petitioners are husband and wife and during the taxable years 1970 and 1972, and at the time of filing of the petitions herein, resided at 6909 Alta Drive, Las Vegas, Nev.

Petitioner Oliver W. Sturtevant (hereinafter referred to as petitioner) was employed by the Atomic Energy Commission at the test site as an engineer during the taxable years 1970

and 1972. During those years petitioner traveled each workday from his residence in Las Vegas to the Nuclear Rocket Development Station (hereinafter referred to as NRDS), a one-way distance of approximately 90 miles.

During the years 1970 and 1972 the Atomic Energy Commission paid petitioner, in addition to his regular salary, $7.50 for each day he reported to NRDS. These payments were $1,650 in 1970 and $1,515 in 1972 and were included on petitioner's withholding statement and included in gross income on petitioner's Federal income tax returns. Petitioner received a supplemental statement with his withholding statement on which these payments were separately stated.

On his 1970 and 1972 Federal income tax returns petitioner deducted $1,576.80 and $1,515, respectively, as travel expense, which amounts were disallowed by respondent. The amount deducted in 1970 was based on 10,440 miles driven at $0.12 a mile plus 162 bus trips at $2 each.

All of petitioner's work-related travel, other than his daily trips between Las Vegas and NRDS, was separately vouchered and reimbursed. Any traveling which he was required to do on the test site after arriving at NRDS was done in a Government vehicle.

Petitioner was never required to stay overnight at the test site, nor did he do so. If he was required to work overtime he received compensatory time off rather than overtime pay.

10. *Jack R. North and Yvonne A. North, docket No. 1241–74.*—Petitioners are husband and wife and during the taxable years 1970 and 1971 resided at 216 Hinkle Street, Las Vegas, Nev., and at the time of filing the petition herein, resided at 2717 Redwood Street, Las Vegas, Nev.

Petitioner Jack R. North was employed by REECO at the Nevada test site as a senior materials drilling agent during the years 1970 and 1971. During the taxable year 1970 and a part of the taxable year 1971 petitioner Yvonne A. North was employed by REECO at the test site as a secretary and a senior clerk.

During the taxable years 1970 and 1971 petitioner Jack R. North traveled each workday from his residence in Las Vegas, Nev., to area 3, a distance of 105 miles each way. During the taxable year 1970 and that part of the taxable year 1971 during which petitioner Yvonne A. North was employed at

the test site, she traveled each workday from her residence in Las Vegas, Nev., to Camp Mercury, a distance of 70 miles each way. During the years in issue, petitioner Jack R. North participated in a carpool, while petitioner Yvonne A. North drove her own vehicle between Las Vegas and the test site.

During the taxable years 1970 and 1971 REECO paid petitioners, in addition to their regular pay, $7.50 for each day petitioner Jack R. North reported to area 3 and $5 for each day petitioner Yvonne A. North reported to Camp Mercury. For petitioner Jack R. North these payments totaled $1,750 in 1970 and $1,700 in 1971. For petitioner Yvonne A. North these payments totaled $1,110 in 1970 and $460 in 1971. All of these payments were included in petitioner's withholding statements and included in gross income on their Federal income tax returns.

On their 1970 and 1971 Federal income tax returns petitioners deducted $4,068 and $2,226.60, respectively, as travel expense. These amounts were disallowed by respondent.

Petitioners worked regular day shifts during 1970 and 1971, and neither was required to stay at the test site overnight, nor did they do so. Petitioner Jack R. North received compensatory time off when required to work overtime, rather than overtime pay.

Petitioner Yvonne A. North was not required to travel in conjunction with her work after she arrived at Camp Mercury. Any traveling which petitioner Jack R. North was required to do after arriving at his regular post of duty in area 3 was done in a vehicle provided by his employer.

11. *Walter E. Griffith and Katheryn Griffith, docket No. 1290–74.*—Petitioners are husband and wife and during the taxable years 1970 and 1971, and at the time of filing the petition herein, resided at 6324 Clarice Avenue, Las Vegas, Nev.

Petitioner Walter E. Griffith (hereinafter referred to as petitioner) was employed by Wackenhut Services, Inc., during the taxable years 1970 and 1971 at the Nevada test site as a security inspector. Petitioner was employed under a contract with the Independent Guard Association of Nevada Local No. 1.

During the taxable years 1970 and 1971 petitioner traveled each workday from his residence in Las Vegas to Camp Mercury, a distance of about 65 miles each way. During those years Wackenhut Services, Inc., paid petitioner, in addition to his regular wages, $5 for each day he reported to Camp Mercury. These payments totaled $995 and $1,020 in 1970 and 1971, respectively, and were included on petitioner's withholding statements and reported on petitioner's 1970 and 1971 Federal income tax returns.

On his 1970 and 1971 Federal income tax returns petitioner deducted $2,778 and $2,837, respectively, as travel expenses, based on the number of miles he traveled each year between his residence in Las Vegas and the test site.

During the years at issue, petitioner was not required to stay at the test site overnight, nor did he do so. He reported for work at Camp Mercury at either 6 a.m. or 6 p.m. and worked shifts ranging in length from 12 to 16 hours depending on the job assignment for that particular day. Generally he worked 4 days and was off 3 days each week unless he was called upon to work overtime.

Petitioner carried food for breakfast and lunch to his post of duty if he was assigned to a stationary post. If he was assigned to a patrol he would stop at a cafeteria for those meals.

All travel on the test site beyond Camp Mercury was done in a vehicle provided by petitioner's employer.

12. *William R. Henderson, docket Nos. 1291–74 and 8983–75.*—During the taxable years 1970, 1972, and 1973, and at the time of filing the petitions herein, petitioner resided at 720 Ann Drive, Las Vegas, Nev.

Petitioner was employed by Lawrence Radiation Laboratory at the test site as an administrative supervisor with post of duty at Camp Mercury during the taxable years 1970, 1972, and 1973. He was responsible for transient housing, feeding, motor pool, daily commuter planes from Livermore, Calif., and security with respect to Lawrence Radiation personnel.

During the years at issue, Lawrence Radiation Laboratory paid petitioner, in addition to his regular pay, $5 for each day he reported to work at Camp Mercury. Petitioner claimed employee business expense deductions for 1970, 1972, and 1973 in the amounts of $2,188.80, $2,610, and $1,145, respectively, which were disallowed by respondent. The

deductions were based on the mileage traveled by petitioner in driving between Las Vegas and Camp Mercury during the years in issue.

Petitioner often worked odd hours and did not receive overtime pay, but he was able to reschedule his workweek to compensate for days on which he worked more than 8 hours. Petitioner was on call whenever there was a field operation in progress, but was seldom required to return to the test site once he had gone home for the day. Petitioner did not stay overnight at the test site during the years in issue.

13. *Leon H. King and Leola King, docket No. 1292–74.*—Petitioners are husband and wife and during the taxable years 1970 and 1971, and at the time of filing the petition herein, resided at 1805 West Helen Avenue, Las Vegas, Nev.

During the taxable years 1970 and 1971 petitioner Leon H. King was employed by REECO in the cafeteria at area 12 of the test site as a fry cook under a contract with Culinary Workers and Bartenders International Union Local 226. Petitioner Leola King was employed during those years by E.G. & G. at control point 1 on the test site as a secretary.

During the taxable years 1970 and 1971 each of the petitioners received from their respective employers, in addition to their regular wages, $7.50 for each day they reported to their respective duty stations. These payments amounted to $1,550 in 1970 and $1,590 in 1971 for petitioner Leon H. King, and $1,755 in 1970 and $1,425 in 1971 for petitioner Leola King. All of these payments were included on petitioners' withholding statements and included in gross income on petitioners' Federal income tax returns.

On their 1970 and 1971 Federal income tax returns petitioners claimed automobile expense in the amounts of $5,495 and $5,384, respectively. During the course of respondent's audit of said returns petitioners agreed that the deductions were excessive to the extent of $1,625 and $1,478 in 1970 and 1971, respectively, and therefore executed Form 4549, leaving in dispute automobile expense deductions in the amounts of $3,870 for 1970 and $2,790 for 1971. These disputed amounts were ultimately disallowed in respondent's statutory notice of deficiency to petitioners.

When petitioner Leon H. King began his employment at the test site in approximately 1961, his duty station was NRDS. In

approximately 1963 or 1964 his post of duty was changed to Camp Mercury until approximately 1968 or 1969 when it was again changed to area 12, where he stayed until he terminated his employment with REECO in 1972. Petitioner Leola King began working at control point 1 at the test site in July 1968, and continued to work there until September 1974.

Petitioner Leon H. King's workday was either 5 a.m. to 1 p.m. or 1 p.m. to 9 p.m. Petitioner Leola King worked from 8 a.m. to 4:30 p.m. As a result, petitioners traveled to work in separate vehicles. Both petitioners carpooled whenever possible. Neither petitioner worked substantial amounts of overtime nor did either stay overnight at the test site.

14. *Phillip J. Toombs and Beverly Toombs, docket Nos. 1294–74 and 5384–75.*—Petitioners are husband and wife and during the taxable years 1970, 1971, and 1972, and at the time of filing the petitions herein, resided at 869 Early Circle, Las Vegas, Nev.

During part of the taxable year 1970 and all of the taxable years 1971 and 1972 petitioner Phillip J. Toombs (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as an electrician in the tunnels at area 12 under a construction contract with Electrical Workers Local 357.

While employed by REECO during 1970, 1971, and 1972 petitioner traveled each workday from his residence in Las Vegas, Nev., to either Camp Mercury or area 12. The one-way distance from petitioner's residence to Camp Mercury is approximately 70 miles and from petitioner's residence to area 12 is approximately 106 miles.

During the taxable years 1970, 1971, and 1972 REECO paid petitioner, in addition to his regular pay, $9.50 for each day he reported to area 12, consisting of $7.50 "subsistence" and $2 "travel pay." These payments totaled $720, $2,133, and $2,251.50 for the years 1970, 1971, and 1972, respectively, and were included in petitioner's withholding statements and included in gross income on petitioner's Federal income tax returns.

On his 1970, 1971, and 1972 Federal income tax returns petitioner deducted $720, $2,133, and $2,251.50, respectively, as travel expense, which amounts were disallowed by respondent.

During the taxable years 1970 and 1971 petitioner seldom worked overtime and usually any overtime work was performed on weekends. Petitioner seldom stayed at the test site overnight. His regular shift was from 8 a.m. to 4:30 p.m.

Petitioner initially became employed by REECO at the test site in October 1969, but he was laid off in April 1970. He was reemployed in January 1971 and was so employed at the time of trial.

Petitioner is required to travel from his residence in Las Vegas to area 12 headquarters by his own means. From there he is provided with transportation to his work location by his employer. His time starts when he reports at the tunnel in which he is to work.

15. *Lonnie L. Nickerson and Lorna M. Nickerson, docket Nos. 1295–74 and 8220–74.*—Petitioners are husband and wife and during the taxable years 1970, 1972, and 1973, and at the time of filing the petitions herein, resided at 5900 West Tropicana, No. 65, Las Vegas, Nev.

During the taxable years 1970, 1972, and 1973 petitioner Lonnie L. Nickerson (hereinafter referred to as petitioner) was employed by REECO in the tunnels of area 12 at the Nevada test site as a miner, under a construction contract with Laborers Union Local 832.

Petitioner was required to travel by his own means from his home in Las Vegas to area 12 headquarters, the one-way distance being 113 miles. REECO paid petitioner during the taxable years 1970, 1972, and 1973, in addition to his regular pay, $9 for each day he reported for work at the tunnels of area 12, consisting of $7.50 "subsistence" and $1.50 "travel pay." These payments totaled $1,596, $1,157, and $2,261 in 1970, 1972, and 1973, respectively. Petitioner deducted $2,745, $1,157, and $2,261 in 1970, 1972, and 1973, respectively, as employee business expense.

For 3 weeks during a strike in 1970 petitioner obtained work in Moab, Utah, in the uranium mines. In conjunction with that employment he incurred deductible business expenses in the amount of $326 which he claimed on his 1970 Federal income tax return and which were allowed by respondent.

Petitioner always reported to the same location in area 12 from which he traveled to his work location in a bus provided

by his employer. He occasionally worked overtime, usually on weekends, but seldom stayed at the test site overnight. He worked day, evening, and nighttime shifts at different times during the years in question.

16. *William F. Cleghorn and I. Jane Cleghorn, docket Nos. 1297–74 and 8485–74.*—Petitioners are husband and wife and during the taxable years 1971 and 1972, and at the time of filing the petitions herein, resided at 6254 Great Smokey Avenue, Las Vegas, Nev.

Petitioner has been employed as a security guard at the test site since February 1, 1965. During the taxable years 1971 and 1972 petitioner William F. Cleghorn (hereinafter referred to as petitioner) was employed by Wackenhut Services, Inc., at the test site as a security guard under a contract with the Independent Guard Association of Nevada Local No. 1.

During the taxable years 1971 and 1972 Wackenhut Services, Inc., paid petitioner, in addition to his regular pay, $5 for each day he reported for work at Camp Mercury. These payments totaled $640 and $905 in 1971 and 1972, respectively, and were included on petitioner's withholding statements and included in gross income on petitioner's Federal income tax returns. Petitioner determined the deduction taken for employee business expense for the taxable years 1971 and 1972 by multiplying 130 miles, the round trip distance from his residence in Las Vegas to Camp Mercury, by the number of trips made each year in traveling back and forth between his residence and the test site. These deductions totaled $1,900.80 in 1971 and $2,591.10 in 1972.

Petitioner reports for work at Camp Mercury at either 6 a.m. or 6 p.m. and works shifts ranging in duration from 12 to 16 hours depending on the location of the particular post of duty to which he is assigned. Petitioner's regular workweek consists of 4 days working and 3 days off. After reporting for work at Camp Mercury all of petitioner's travel on the test site is done in a vehicle provided by his employer.

During the taxable years 1971 and 1972 petitioner rented sleeping quarters at Camp Mercury 365 days each year at a cost of $5.25 per week. Petitioner usually returned home at the conclusion of each shift; however, he did not return home if required to work a complete extra shift, which occurred on occasion.

Petitioner maintained daily records during the taxable years 1971 and 1972 showing the post of duty to which he was assigned and the hours worked.

17. *Angela M. Thayer, Jean M. Thayer, docket Nos. 1298–74 and 1301–74.* During the taxable years 1970, 1971, and 1972, and at the time of filing the petitions herein, petitioners were husband and wife and resided at 6340 Hobart Avenue, Las Vegas, Nev. Petitioners filed separate Federal income tax returns for the taxable years 1970, 1971, and 1972, having elected to split their income and expenses.

During the taxable years 1970, 1971, and 1972 petitioner Jean M. Thayer (hereinafter referred to as petitioner) was employed by REECO at the test site as superintendent of engineering for environmental sciences and reported for work at Camp Mercury. The round trip distance from petitioner's residence to Camp Mercury and back was approximately 146 miles.

After arriving at Camp Mercury petitioner traveled around the test site, as required, in a vehicle provided by his employer, if available. On occasion, usually near the day of a nuclear test, vehicles would not always be available and he would have to use his own automobile to travel around the test site.

During the taxable years 1970, 1971, and 1972 REECO paid petitioner $5 for each day he reported for work at Camp Mercury. These payments totaled $1,140 in 1970, $1,105 in 1971, and $1,055 in 1972, and were included on Jean Thayer's W-2 and reported by petitioner as income. On his 1970, 1971, and 1972 Federal income tax returns, petitioner deducted $1,384.40, $1,400.85, and $1,387.90, respectively, as employee business expense.

Petitioner ordinarily worked a regular Monday through Friday workweek and seldom stayed at the test site overnight.

18. *Darrell L. Glass, docket Nos. 1302–74 and 7090–74.*— During the taxable years 1970, 1971, and 1972, and at the time of filing the petitions herein, petitioner resided at 1933 Yale Street, North Las Vegas, Nev.

During the taxable years 1970, 1971, and 1972 petitioner was employed by Pan American Airways, Inc., at NRDS as a heavy equipment operator under a contract with the Trans-

port Workers Union. Petitioner commenced this employment in 1963.

Pan American paid petitioner during the taxable years 1970, 1971, and 1972, in addition to his regular pay, $7.50 for each day he reported to work at NRDS. These payments totaled $1,717.50, $1,680, and $1,807.50 in 1970, 1971, and 1972, respectively. He deducted $4,159.80, $4,078.80, and $4,354.20, respectively, as travel expense on his 1970, 1971, and 1972 returns, which amounts were disallowed by respondent.

During the taxable years 1970, 1971, and 1972 petitioner worked overtime about 20 times a year; however, he never stayed overnight at the test site.

Petitioner traveled to NRDS each workday by his own means and was provided with transportation from that point by his employer. The one-way distance from his home to NRDS is about 90 miles. In traveling to NRDS from Las Vegas petitioner drove directly to the NRDS guard station and did not pass through the guard station at Camp Mercury.

19. *Estate of Richard J. Johnson, deceased, by Aline Johnson, executrix, and Aline Johnson, docket No. 1309–74.*— Petitioners are husband and wife who during the taxable years 1970 and 1971, and at the time of filing the petition herein, resided at 5913 Iris Avenue, Las Vegas, Nev.

Petitioner Richard J. Johnson (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as an electronics technician during the taxable years 1970 and 1971.

During the taxable years 1970 and 1971, REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $1,090 and $1,280 in 1970 and 1971, respectively. Petitioner deducted $1,202 and $1,309.68 in 1970 and 1971, respectively, as employee business expense, which were disallowed by respondent.

20. *Charles A. Miesch and Ruth Miesch, docket No. 1312–74.*—Petitioners are husband and wife and during the taxable years 1970, 1971, and 1972, and at the time of filing of the petition herein, resided at 3124 Theresa, Las Vegas, Nev.

Petitioner Charles A. Miesch (hereinafter referred to as petitioner) was employed by REECO during 1970, 1971, and

1972 at the tunnels of area 12 of the test site as an electrician foreman, under a construction contract with Electrical Workers Local 357.

During the taxable years 1970, 1971, and 1972, REECO paid petitioner $9.50, consisting of $7.50 "subsistence" and $2 "travel pay," in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $1,719.50, $2,270.50, and $2,280 in 1970, 1971, and 1972, respectively, and were included in income on petitioner's withholding statements and included in gross income on his Federal income tax returns. On his 1970, 1971, and 1972 Federal income tax returns petitioner claimed as automobile expense the amounts of $1,719.50, $2,270.50, and $2,280 in 1970, 1971, and 1972, respectively.

Petitioner reported for work at area 12 headquarters and was provided with a truck by his employer in which to travel to his work locations. If petitioner reported for work but was sent home because of a test, he received a minimum of 4 hours pay plus his "subsistence" and "travel pay." The one-way distance from petitioner's home in Las Vegas to area 12 is about 108 miles. Petitioner did not carry tools between Las Vegas and the test site.

Petitioner worked considerable overtime; however, he stayed at the test site overnight only about three or four times a year. On such occasions he either rented a room or used someone else's quarters. Petitioner usually drove home to Las Vegas even when he worked a double shift.

21. *Ronald V. Hicks and Janie K. Hicks, docket No. 1316–74.*—Petitioners are husband and wife and during the taxable years 1970 and 1971, and at the time of filing the petition herein, resided at 4216 Blume Circle, Las Vegas, Nev.

During the taxable years 1970 and 1971 petitioner Ronald V. Hicks (hereinafter referred to as petitioner) was employed by REECO at area 2 of the test site as an electrician under a contract with Electrical Workers Local 357. During those years, REECO paid petitioner $9.50, consisting of $7.50 "subsistence" and $2 "travel pay," in addition to his regular wages, for each day he reported for work at the test site. These payments totaled $1,713.50 and $2,080.50 in 1970 and 1971, respectively, and were included as income on petitioner's withholding statements and included in gross income

on his Federal income tax returns. Petitioner claimed as a travel expense deduction on his 1970 and 1971 returns the amounts of $1,713.50 and $2,080.50, respectively.

Petitioner travels to area 2 headquarters by his own means and is provided transportation from that point to his work location by his employer.

Petitioner has worked an 8 a.m. to 4:30 p.m. shift at the test site for 13 years. During the years at issue, petitioner worked overtime on occasion; however he did not remain overnight at the test site.

For a period of about 8 weeks during 1970 when petitioner was unable to work at the test site due to a strike, he went to Houston, Tex., to work. There he incurred employee business expenses for airfare, meals, and lodging in the total amount of $692, which was claimed on petitioner's return and allowed by respondent.

22. *Billy J. Sloat, docket No. 1324–74.*—During the taxable years 1970, 1971, and 1972, and at the time of filing the petition herein, petitioner resided at 3808 El Parque, Las Vegas, Nev.

Petitioner was employed by REECO during the taxable years 1970, 1971, and 1972 as a general transport foreman. He is a member of the Teamsters Union.

During the taxable years 1970, 1971, and 1972, REECO paid petitioner an amount, depending on his duty station, in addition to his regular salary, for each day he reported for work at the test site. These payments totaled $1,125, $1,100, and $1,175 in 1970, 1971, and 1972, respectively. These same amounts were deducted by petitioner as travel expenses in the years in which the payments were received.

Petitioner has been employed at the test site since 1961. From 1961 until 1968, petitioner's worksite was area 12. Since 1968, however, petitioner has reported to work at Camp Mercury. The round trip distance from petitioner's residence in Las Vegas to Camp Mercury is 130 miles. While petitioner generally travels to work in a carpool, he will occasionally drive his own car when scheduling becomes a problem.

During the years at issue, petitioner's typical workday lasted from 6 a.m. to 6 p.m. Petitioner has worked overtime on occasion, but he has seldom stayed overnight at the test site.

Although petitioner rented a trailer for 2 months during 1970 at the test site, he used it only once or twice during that time.

23. *John W. Cavanee, docket No. 1327–74.*—During the taxable years 1970 and 1971, and at the time of filing the petition herein, petitioner resided at 504 Judson Avenue, North Las Vegas, Nev.

During the taxable years 1970 and 1971 petitioner was employed by REECO at the Nevada test site as an electrician. During those years, REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay for each day he reported for work at the test site. These payments totaled $1,445 and $1,929.50 in 1970 and 1971, respectively. Petitioner deducted $3,326.40 in 1970 and $2,361.96 in 1971 as employee business expense, which amounts were disallowed by respondent.

24. *Janet R. Jefferson, docket No. 1329–74.*—During the taxable years 1970, 1971, and 1972, and at the time of filing the petition herein, petitioner resided at 1138 Sir Patrick, Las Vegas, Nev.

During the taxable years 1970, 1971, and 1972 petitioner was employed by E.G. & G. at the Nevada test site as a secretary. During those years E.G. & G. paid petitioner an amount, depending on her duty station, in addition to her regular pay, for each day she reported for work at the test site. These payments totaled $1,755, $1,620, and $1,522.50 in 1970, 1971, and 1972, respectively. Petitioner deducted $1,755, $1,620, and $1,522 in 1970, 1971, and 1972, respectively, as employee business expense, which amounts were disallowed by respondent.

25. *Anthony A. Marinucci and Katherine Marinucci, docket Nos. 1339–74 and 4437–75.*—Petitioners are husband and wife and during the taxable years 1970, 1971, 1972, and 1973, and at the time of filing the petitions herein, resided at 1928 Bassler Street, North Las Vegas, Nev.

During the taxable years 1970, 1971, 1972, and 1973 petitioner Anthony A. Marinucci (hereinafter referred to as petitioner) was employed by REECO at the test site as a heavy-duty driver. He is a member of the Teamsters Union.

During the years at issue, REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported to work at the test site.

These payments totaled $2,012.50, $2,190, $2,232.50, and $2,213.50 in 1970, 1971, 1972, and 1973, respectively. They consist of both "subsistence" and "travel pay." Petitioner deducted $4,437.90, $4,515.48, $4,515.48, and $4,210 in 1970, 1971, 1972, and 1973, respectively, as employee business expense, which were disallowed by respondent.

Petitioner has been employed at the test site since 1961. Until 1969 petitioner reported to work at area 12. He has worked in area 2 since about 1969, on the day shift. Typically, petitioner drives his own car each workday from his home in Las Vegas to area 2 and back, a distance of about 55 miles each way.

Petitioner's duties during the years at issue involved driving a bus back and forth between area 2 and area 12. He works overtime about 1 hour a day, since he must arrive at work one-half hour earlier and must leave work one-half later than usual in order to drive the bus.

Petitioner has occasionally rented one-half of a trailer at area 12 for about $10.50 a week, but uses the trailer primarily to change clothes. Petitioner stayed overnight at the test site only if he had to work more than 2 hours overtime on any particular day.

On days when a nuclear device is to be tested petitioner reports for work as usual, and, if he is sent home on that day, he still receives at least 2 hours' pay. Petitioner estimates that he loses about 2 weeks of work per year due to his being sent home on shot days.

26. *John M. Sabo, docket No. 1357–74.*—During the taxable years 1970 and 1971, and at the time of filing the petition herein, petitioner resided at 1207 South 7th Street, Las Vegas, Nev.

Petitioner was employed by Wackenhut Services, Inc., at the Nevada test site as a security inspector during the taxable years 1970 and 1971. During those years Wackenhut Services, Inc., paid petitioner, in addition to his regular pay, $5 for each day he reported for work at the test site. These payments totaled $975 in 1970 and $995 in 1971. Petitioner received a $5-per-day subsistence allowance even though he may have worked more than one shift during a 24-hour period.

All of the security inspectors at the test site are on duty for 4 days then off duty for 3 days, unless they are asked to work overtime, in which case they may work 5 or 6 days a week.

While employed by Wackenhut at the test site, petitioner reported each workday to the guard headquarters at Camp Mercury. He drives his own vehicle to and from the test site, a distance of 65 miles each way. Petitioner has never stayed overnight at the test site although he occasionally rests between shifts when he works overtime. He typically buys his lunch at the test site for approximately $1.50.

Petitioner deducted $2,849 in 1970 and $2,849 in 1971 as travel expense, based on the mileage traveled between his residence and the test site in each year. The claimed deductions were disallowed by respondent.

27. *Leonard E. Ramsey, docket Nos. 1369–74 and 4818–75.*—During the taxable years 1970, 1971, and 1973, and at the time of filing the petitions herein, petitioner resided at 3687 East Lake Mead, Las Vegas, Nev.

Petitioner was employed by REECO at the test site as a carpenter during the taxable years 1970, 1971, and 1973. During those years REECO paid petitioner an amount, depending on his duty station, in addition to his regular wages, for each day he reported for work at the test site. Petitioner received a subsistence allowance of $7.50 a day and a travel allowance from $0.50 to $2 per day, depending on the area to which he was assigned. These payments totaled $1,348.50, $1,861, and $1,460 in 1970, 1971, and 1973, respectively. Petitioner deducted $2,851.20, $1,860.93, and $1,460 in 1970, 1971, and 1973, respectively, as employee business expense, which amounts were disallowed by respondent.

Petitioner began his employment at the test site on December 14, 1965. While he was employed as a carpenter, petitioner was also a millwright and had on occasion worked in that capacity at the test site. Petitioner is required to furnish all of his carpentry and millwright tools on the job.

Petitioner has hypoglycemia which causes him to become drowsy at times. During the taxable year 1970 and part of 1971, he rented a bed in a four-man trailer at the test site at a cost of $5.25 a week. Petitioner occasionally stores his tools in a locker in his rented trailer.

For a period of 7 weeks during 1970 when petitioner was unable to work at the test site due to a strike, he located work in Bull Head City, Ariz., as a millwright. There he incurred travel expenses in the total amount of $302.40, which was claimed on petitioner's return and initially disallowed by respondent. Respondent has abandoned his prior position with respect to those expenses in the amount of $302.40.

28. *John D. Bustamente and Yolanda Bustamente, docket Nos. 1372–74 and 4817–75.*—Petitioners are husband and wife and during the taxable years 1970, 1971, and 1973, and at the time of filing the petitions herein, resided at 111 Maple, Henderson, Nev.

During the taxable years 1970, 1971, and 1973, petitioner John D. Bustamente (hereinafter referred to as petitioner) was employed by REECO at the test site as a laborer helper on a drilling crew under a contract with the Laborers Union. During those years REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. Petitioner receives a "subsistence" allowance of $7.50 per day, and "travel pay" from $1 to $2 per day. These payments totaled $1,550.50, $2,058, and $2,121, in 1970, 1971, and 1973, respectively. On their amended 1970 Federal income tax return, and their 1971 and 1973 Federal income tax returns, petitioners deducted $1,550.50, $1,988, and $2,121 respectively, as travel expense, which respondent disallowed.

Petitioner has worked at the test site since 1965 as a laborer on the drilling rigs. During 1966 and 1967 he reported for duty at area 12. Since that time he has reported to areas 3, 19, and 20; however, he ordinarily reports to work at area 3, approximately 95 miles from his residence in Henderson, Nev. He drives his private automobile to the test site since he is required to remain on the job until he is relieved from duty at the drilling rig.

Petitioner generally reports for work at 8 a.m. and, provided he is relieved from duty as scheduled, departs work at 4:30 p.m. He rarely remains overnight at the test site, although he has remained overnight on occasion when he has overtime work to perform.

29. *Ernest Saxton, docket Nos. 1388–74 and 4819–75.*— During the taxable years 1970 and 1973, and at the time of

filing the petitions herein, petitioner resided at 4080 North Helen Avenue, Las Vegas, Nev.

Petitioner was employed by Wackenhut Services, Inc., at the test site as a security inspector during the taxable years 1970 and 1973. During those years, Wackenhut Services, Inc., paid petitioner, in addition to his regular pay, $7.50 for each day he reported for work at the test site. These payments totaled $1,590 and $700.20 in 1970 and 1973, respectively. On his 1970 and 1973 Federal income tax returns petitioner claimed as employee business expense the amounts of $2,194.83 and $806.13, respectively, which respondent disallowed.

Petitioner was employed as a security inspector at the test site in 1957. From 1964 through June 14, 1973, he was stationed at the NRDS. Generally he worked 4 days and was off 3 days each week. He usually worked a 12½-hour shift.

The guard station at NRDS did not contain any sleeping quarters. Accordingly, petitioner purchased a pickup truck and installed a camper on the truck bed in order to have a place to sleep. He typically drove his vehicle to the guard station at NRDS on Monday, stayed in his camper when he was off duty, and returned to Las Vegas at the end of his shift on Thursday. On occasion, however, he would return to his home in Las Vegas during the week.

30. *Jack E. Janne and Dee Anne Janne, docket Nos. 1389–74 and 1661–75.*—Petitioners are husband and wife and during the taxable years 1970 and 1972, and at the time of filing the petitions herein, resided at 1727 Michael Way, Las Vegas, Nev.

During the taxable years 1970 and 1972, petitioner Jack E. Janne (hereinafter referred to as petitioner) was employed by Aerojet General Corp. at the test site as a nuclear engineer. During those years Aerojet General Corp. paid petitioner, in addition to his regular salary, $7.50 for each day he reported for work at NRDS.

These payments totaled $1,642.52 in 1970 and $2,268 in 1972. Petitioners deducted $2,236 in 1970 and $2,268 in 1972, as employee business expense, which respondent disallowed.

In order to get to work petitioner either drove his car, took the bus, or flew his private airplane. Petitioner paid $1 each way when he rode the bus. He did not deduct the costs he

incurred in flying his private plane to the airfield near Camp Mercury at the test site.

Although during the course of his employment by Aerojet General at NRDS petitioner worked in several different locations, he usually worked in the same place for a year or more at a time. The greatest distance between any two of these locations at NRDS was 5 to 7 miles.

Petitioner worked overtime on occasion but kept no records as to the amount of time he worked overtime, since he was not paid for it.

31. *Ray G. Cook and Maxine S. Cook, docket No. 1390–74.*— Petitioners are husband and wife and during the taxable years 1970 and 1971, and at the time of filing the petition herein, resided at 1300 Jessica Avenue, Las Vegas, Nev.

During the taxable years 1970 and 1971, petitioner Ray G. Cook (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as a general carpenter foreman. During those years, REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $1,496 and $1,606.50 in 1970 and 1971, respectively.

The round trip distance from petitioner's residence to the carpenter's yard at the test site is 190 miles. Petitioner computed the deduction for travel expense on his 1970 and 1971 Federal income tax returns by multiplying the round trip mileage by the number of days he drove his own vehicle to the test site. Petitioner deducted $1,496 in 1970 and $1,607 in 1971, as travel expense, which respondent disallowed.

Petitioner began his employment at the test site in 1961. He generally reports to area 3 where his employer provides him with transportation from that point to wherever his particular assignment is on that day. Petitioner has on occasion worked in area 17 on weekends.

Petitioner normally travels to the test site in a carpool. He drives his own car only when he is required to stay with the men he supervises on overtime work. Whenever his men are offered overtime work, petitioner must remain at the test site. Petitioner occasionally stayed overnight when he worked overtime, renting a trailer space when he did so. When his crew works overtime, he will purchase an evening meal.

32. *Russell Weaver and Irma B. Weaver, docket No. 1405–74.*—Petitioners are husband and wife and during the taxable years 1970 and 1971, and at the time of filing the petition herein, resided at 1824 Saylor Way, Las Vegas, Nev.

During the taxable years 1970 and 1971, petitioner Russell Weaver (hereinafter referred to as petitioner) was employed by Wackenhut Services, Inc., at the Nevada test site as a security inspector. Petitioner reported for work at the guard station at Camp Mercury. The one-way distance between his residence and Camp Mercury is 65 miles.

During the taxable years 1970 and 1971, Wackenhut Services, Inc., paid petitioner an amount, in addition to his regular pay, for each day he reported for work at Camp Mercury. These payments totaled $815 and $780 in 1970 and 1971, respectively. Petitioner deducted $2,357 and $2,135 in 1970 and 1971, respectively, as employee business expense, based on the mileage he traveled in each year between his residence in Las Vegas and the test site. Respondent disallowed the deductions.

33. *Estate of Harley R. Roberts, Jr., deceased, and Dorothy Roberts, administratrix, and Dorothy Roberts, docket No. 1408–74.*—Petitioners were husband and wife and during the taxable years 1970 and 1971, and at the time of filing the petition herein, resided at 1520 Statz Court, Las Vegas, Nev.

During the taxable years 1970 and 1971 petitioner Harley R. Roberts, Jr. (hereinafter referred to as petitioner), was employed by Wackenhut Services, Inc., at the Nevada test site as a security inspector.

During the taxable years 1970 and 1971, Wackenhut Services, Inc., paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $882.50 and $1,075 in 1970 and 1971, respectively. Petitioner deducted $2,356.20 and $2,966 in 1970 and 1971, respectively, as employee business expense based on the mileage he traveled each year between his residence and the test site. Respondent disallowed the deductions.

Petitioner commenced work at the test site as a security inspector during 1963. He reported for work at Camp Mercury and was assigned out of Camp Mercury to one of the numerous guard stations or patrols. He used his own vehicle,

a pickup truck with an extra gas tank, for getting to and from his residence and Camp Mercury.

On December 18, 1970, petitioner was on duty when the "Banberry" test shot was fired and leaked into the atmosphere. Petitioner was not relieved from his station. He died on April 17, 1974, of leukemia.

Petitioner rented a trailer during the taxable years here involved for $10.50 a week. On occasion, petitioner slept in his trailer quarters overnight, but there is no record of how many times he stayed overnight. He typically brought food from home and would eat at the test site.

34. *Glenn C. Handley and Denzell E. Handley, docket No. 1418-74.*—Petitioners are husband and wife and during the taxable year 1972, and at the time of filing the petition herein, resided at 6076 Castlemont, Las Vegas, Nev.

During the taxable year 1972 petitioner Glenn C. Handley (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as an electrician.

During the taxable year 1972, REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $1,707 in 1972. Petitioner deducted $1,973 in 1972 as employee business expense, based on the mileage he traveled during that year between his residence and the test site. The deduction was disallowed by respondent.

35. *John T. Fouts and Maxine Fouts, docket No. 1422-74.*— Petitioners are husband and wife and during the taxable years 1970 and 1971, and at the time of filing the petition herein, resided at 213 South Wallace Drive, Las Vegas, Nev.

During the taxable years 1970 and 1971, petitioners John T. Fouts and Maxine Fouts were employed by REECO at the test site as a supervisor and staff assistant, respectively.

During the taxable years 1970 and 1971, REECO paid each of the petitioners $7.50, in addition to their regular pay, for each day they reported for work at the test site. These payments totaled $1,580 and $1,765 for John T. Fouts, and $1,732.50 and $1,652.50 for Maxine Fouts in 1970 and 1971, respectively. Petitioners deducted $4,317 and $3,418 in 1970 and 1971, respectively, as travel expense, which respondent disallowed.

Petitioners both started work at the test site in 1958. During the years at issue, John T. Fouts was assigned to area 6, while Maxine Fouts was assigned to area 3. John T. Fouts worked for another employer at another location during 1960; however, he returned to work for REECO at the test site in 1961. Maxine Fouts was originally assigned to Camp Mercury, but on December 6, 1965, she was transferred to area 9. In 1966 she was transferred from area 9 to area 2; then in 1970 she was transferred to area 3 where she remained until the termination of her employment in November 1971.

Petitioners each received a monthly salary and thus neither was paid for any overtime work. They received compensatory time off for any overtime work they performed. When they worked overtime on a weekend, they would receive an extra day's per diem allowance. They did not stay overnight at the test site since there are no quarters for married couples at the site. Petitioners generally drove to work together during 1970 and 1971 averaging 40,000 to 50,000 miles a year.

Petitioners paid a babysitter approximately $25 per week to babysit with their young child.

36. *Charles D. McKnight and Alois E. McKnight, docket Nos. 1455-74 and 8611-74.*—Petitioners are husband and wife and during the taxable years 1970 and 1972, and at the time of filing the petitions herein, resided at 1721 Loch Lomond Way, Las Vegas, Nev.

During the taxable years 1970 and 1972 petitioner Charles D. McKnight (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as a radiological monitor. During those years REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $1,195 and $1,090 in 1970 and 1972, respectively. They were included in gross income on petitioner's 1970 and 1972 Federal income tax returns and deducted as employee business expense in those same years. Respondent disallowed the deductions.

37. *Charles E. Wilson and Patricia R. Wilson, docket Nos. 1466-74 and 4820-75.*—Petitioners are husband and wife and during the taxable years 1972 and 1973, and at the time of filing the petitions herein, resided at 3960 Placita Avenue, Las Vegas, Nev.

During the taxable year 1972 petitioner Charles E. Wilson (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as a quality control specialist.

During the taxable year 1972, REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported to work at the test site. These payments totaled $1,767.50 in 1972. On his 1972 and 1973 Federal income tax returns, petitioner deducted $820 and $1,655, respectively, as employee business expense, which respondent disallowed.

38. *Earl E. Oliver and Wanda J. Oliver, docket Nos. 1488–74 and 8982–75.*—Petitioners are husband and wife and during the taxable years 1970 and 1973, and at the time of filing the petitions herein, resided at P.O. Box 252, Indian Springs, Nev.

During the taxable years 1970 and 1973, petitioner Earl E. Oliver (hereinafter referred to as petitioner) was employed by REECO at the test site as a driller's helper. He belongs to the Operating Engineers Union.

During the taxable years 1970 and 1973, REECO paid petitioner an amount, depending on his duty station, in addition to his regular salary, for each day he reported to work at the test site. These payments totaled $1,298 in 1970 and $2,106 in 1973. Petitioner deducted $2,705 and $2,106 in 1970 and 1973, respectively, as employee business expense, which respondent disallowed.

Petitioner commenced work at the test site in 1963. He was laid off by REECO around May 1970, and was rehired in September 1970. He worked parts of the months of September through December, but he was laid off again in December 1970. He was rehired again sometime during 1971, and worked for REECO during the remainder of 1971, 1972, and 1973.

The drilling crews at the test site report for duty either at an area headquarters or at the drilling site. During 1970 petitioner drove his car to the drilling sites, usually in area 2, 3, or 12. In 1973 when petitioner was working on drilling rigs in areas 19 and 20, he would drive to area 12 where he would catch a company bus to the drilling site. During 1973 when petitioner was working in areas 19 and 20, he would have to leave his residence 30 minutes earlier than normal in order to catch the bus at area 12.

Petitioner has lived in Indian Springs, Nev., since 1970. On occasion he will drive to the test site in a carpool with certain other members of his drilling crew. He calculated the deduction on his 1970 and 1973 income tax returns by estimating the number of times he drove his own vehicle to the test site and by multiplying that figure by his estimated round trip mileage to the test site.

Since petitioner has seven children, petitioner's wife must work, and, as a result, they generally hire a babysitter at a cost of $20 to $30 per week.

Petitioner purchased an automobile during 1967 or 1968 when he was told by one of REECO's drilling supervisors that he would not be hired unless he could furnish his own transportation to the test site.

39. *John M. Wallace and Rosetta Wallace, docket No. 1494–74.*—Petitioners are husband and wife and during the taxable year 1970, and at the time of filing the petition herein, resided at 6236 Casada Way, Las Vegas, Nev.

During the taxable year 1970 petitioner John M. Wallace (hereinafter referred to as petitioner) was employed by REECO at the test site as a carpenter. Petitioner is a foreman and has been employed at the test site since 1960, except for a period of about 2 months during 1966.

During the taxable year 1970, REECO paid petitioner an amount, depending on his duty station, in addition to his regular salary, for each day he reported for work at the test site. These payments totaled $1,470.50 in 1970. He normally receives a per diem allowance of $7.50 per day, and an additional travel allowance if he works in area 19 or 20. Petitioner deducted $1,050 in 1970, as employee business expense, which respondent disallowed.

Petitioner generally reports for work at area 3, although he reports to area 19 or 20 about 10 percent of the time. The round trip distance between his residence and area 3 is 200 miles.

Petitioner's responsibilities as a foreman sometimes involve remaining on duty when his crew is working overtime. He usually rents a trailer space at the test site if he works more than 2 hours overtime. Petitioner drove his automobile a total of 31,638 miles, including personal use, in 1970. He put two sets of tires on his car during that year.

Although petitioner has certain tools which he needs in connection with his work, he normally stores them in the shop at area 3.

40. *Herbert W. Martens and Lillian M. Martens, docket No. 1585-74.*—Petitioners are husband and wife and during the taxable year 1972, and at the time of filing the petition herein, resided at P.O. Box 566, Indian Springs, Nev.

During the taxable year 1972 petitioner Herbert W. Martens (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as an electrician. During that year REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $1,714.50 in 1972. They were included in gross income on petitioner's 1972 Federal income tax return and deducted in that year as employee business expense. Respondent disallowed the deduction.

41. *William L. Finneran, docket No. 2935-74.*—During the taxable years 1970 and 1971, and at the time of filing the petition herein, petitioner resided at 3340 Rancho Road, Las Vegas, Nev.

During the taxable years 1970 and 1971 petitioner was employed by REECO at the Nevada test site as an electrician. During those years REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $1,748 and $2,318 in 1970 and 1971, respectively. Petitioner deducted $2,877.32 in 1970 and $3,042 in 1971, as employee business expense, which respondent disallowed.

42. *Lewis Frank Terry and Merle K. Terry, docket No. 3618-74.*—Petitioners are husband and wife and during the taxable years 1971 and 1972, and at the time of filing the petition herein, resided at 220 South 14th Street, Las Vegas, Nev.

During the taxable years 1971 and 1972, petitioner Lewis Frank Terry (hereinafter referred to as petitioner) was employed by REECO at the test site as a painter foreman under a contract with Painters Union Local 159. During those years REECO paid petitioner an amount, depending on his duty station, in addition to his regular salary, for each day he reported for work at the test site. These payments totaled

$2,031.50 and $1,803 in 1971 and 1972, respectively. They consist of $7.50 per day "subsistence" and $1 per day "travel pay." Petitioner deducted $3,043.35 in 1971 as employee business expense based on his travel between Las Vegas and the test site. Respondent disallowed the deductions.

Petitioner has been working at the test site since 1954. During that year and for a number of years subsequent thereto he received a subsistence allowance of $15 a day. While his work from 1954 to 1961 was intermittent, he has been steadily employed at the test site since 1961.

Petitioner reports to work at the painter's shop in area 3. There he is provided with a truck by REECO to travel to various work locations in other areas of the test site.

Petitioner carpooled for approximately 6 months during 1971. Thereafter he drove his own car because he could not accommodate his schedule to the carpool. On several occasions during 1972 petitioner allowed other persons to travel to work in his vehicle. Petitioner reported any amounts he received from these passengers as income in 1972. Respondent has allowed his expenses to the extent of such income for 1972, disallowing only a claimed loss of $317.12.

Petitioner has worked overtime on occasion, but he did not remain at the test site overnight during the years 1971 or 1972.

During a strike in 1970 at the test site, petitioner secured employment at Bull Head City, Ariz., for 4 months.

43. *Mario D. Colapelle, docket No. 5805–74.*—During the taxable year 1972, and at the time of filing the petition herein, petitioner resided at 6215 West Craigmont Avenue, Las Vegas, Nev.

During the taxable year 1972 petitioner was employed by REECO at the Nevada test site as an electrician. During that year REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $1,376 in 1972. Petitioner deducted $2,451.60 in 1972 as employee business expense based on his travel between Las Vegas and the test site. Respondent disallowed the deduction.

44. *Thomas B. Harrell, Jr., and Clemmie J. Harrell, docket No. 6845–74.*—Petitioners are husband and wife and during the taxable year 1972, and at the time of filing the petition

herein, resided at 3139 East Sahara Avenue, Space 58, Las Vegas, Nev.

During the taxable year 1972 petitioner Thomas B. Harrell, Jr. (hereinafter referred to as petitioner), was employed by REECO at the Nevada test site as an electrician. During that year REECO paid petitioner an amount, depending on his duty station, in addition to his regular pay, for each day he reported for work at the test site. These payments totaled $1,912 in 1972. Petitioner deducted $1,915.20 in 1972 as employee business expense based on his travel between his residence in Las Vegas and the test site. Respondent disallowed the deduction.

45. *John I. Manganaro, docket No. 7194–74.*—During the taxable year 1972, and at the time of filing the petition herein, petitioner resided at 42 Boulder Highway, Space 413, Las Vegas, Nev.

During 1972 petitioner was employed by REECO at the Nevada test site as a warehouse clerk. He belongs to Teamsters Union Local 7631.

During the taxable year 1972, REECO paid petitioner pursuant to a collective bargaining agreement with the Teamsters, $5 a day, in addition to his regular pay, for each day he reported to work at Camp Mercury. These payments totaled $1,085 in 1972 and were included in petitioner's withholding statement and included in gross income on petitioner's 1972 Federal income tax return. On his 1972 Federal income tax return petitioner deducted $1,085 as travel expense based on the mileage he traveled in that year between his residence in Las Vegas and the test site. Respondent disallowed the deduction.

Petitioner started to work at the test site in 1957. He was laid off several times between 1957 and 1965; however, in November 1965 he was rehired by REECO to work at the test site. Petitioner worked at Camp Mercury continuously from 1965 until he retired in 1975.

Petitioner's round trip mileage from home to Camp Mercury is 150 miles. He belonged to a carpool during part of 1972 and computed his deduction for travel expense by multiplying the number of times he drove his own car to work by the round trip mileage between his residence and the test site. Any traveling which petitioner was required to do after

arriving at the test site was done on company time in a company vehicle.

46. *Robert B. Worts and Sue Ann Worts, docket No. 7290–74.*—Petitioners are husband and wife and during the taxable year 1970, and at the time of filing the petition herein, resided at P.O. Box 7333, Las Vegas, Nev. Petitioners filed separate Federal income tax returns for the taxable year 1970.

During the taxable year 1970 petitioner Robert B. Worts (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as an electrician. During that year REECO paid petitioner an amount, depending on his duty station, in addition to his regular salary, for each day he reported for work at the test site. These payments totaled $1,301.50 in 1970.

47. *Narcena Taylor, docket No. 7595–74.*—During the taxable year 1972, and at the time of filing the petition herein, petitioner had the address of Box 424, Indian Springs, Nev.

During the taxable year 1972 petitioner was employed by REECO at the test site as a clerk. In 1972 REECO paid petitioner an amount, depending on her duty station, in addition to her regular pay, for each day she reported for work at the test site. These payments totaled $1,200 in 1972. Petitioner deducted $960 in 1972 as employee business expense based on her travel between her residence in Indian Springs and the test site. Respondent disallowed the deduction.

Petitioner has been employed at the test site since July 1969. She worked in area 12 until April 1970 when she was transferred to Camp Mercury. Later in 1970 she again was transferred from Camp Mercury to area 6, where she remained until late 1971. From late 1971 until March of 1972 she was stationed in Las Vegas. In March 1972 she was transferred back to area 6 where she has remained until the present time. She has been employed with REECO continuously since 1969.

Petitioner received a $5-per-day "subsistence" allowance when she was stationed at Camp Mercury and $7.50 when she worked in any of the forward areas. She received no allowance while she was working in Las Vegas. While working at Camp Mercury or area 6, she drove to work with her brother-in-law. She purchased her own car, however, when she was trans-

ferred to the REECO office in Las Vegas. During the time she worked in area 12, she rented a trailer space with five other women at the test site.

The town of Indian Springs has no shopping or medical facilities. Petitioner purchased a trailer when she moved to Indian Springs, since there was no place to rent. She has a teenage son who resides with her in Indian Springs.

48. *Harold M. Dittmer, docket Nos. 2405–75 and 8304–75.*— During the taxable years 1972 and 1973, and at the time of filing the petitions herein, petitioner resided at 413 Chateau Drive, Henderson, Nev.

Petitioner was originally employed at the Nevada test site through the Teamster Union Hall by REECO as a stock room clerk. He started to work in 1965 at Camp Mercury and was laid off in 1968. He was rehired in 1969 to work at the test site and was assigned to area 12. This job lasted approximately 1½ years before he was laid off again. He was again hired by REECO in late 1970 and worked continuously from that date through 1973 at Camp Mercury.

During 1972 and 1973, petitioner traveled each workday from his residence in Henderson, Nev., to Camp Mercury, a distance of 70 miles each way. He often carpooled with a fellow worker, driving about half the time.

During 1972 and 1973 REECO paid petitioner $5 a day, in addition to his regular salary, for each day he reported to work at Camp Mercury. The deductions claimed on petitioner's returns for 1972 and 1973 were computed by multiplying the round trip distance of 140 miles by 122 and 125 trips, respectively. Petitioner deducted $1,987 and $2,025 in 1972 and 1973, respectively, as employee business expense, based on his travel between Henderson, Nev., and the test site. Respondent disallowed the deductions.

49. *John R. Eyraud and Jo Anne Eyraud, docket No. 8914–75.*—Petitioners are husband and wife and during the taxable year 1973, and at the time of filing the petition herein, resided at 6213 Clarice Street, Las Vegas, Nev.

During the taxable year 1973 petitioner John R. Eyraud (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as an operating engineer.

During the taxable year 1973, REECO paid petitioner an amount, depending on his duty station, in addition to his

regular pay, for each day he reported for work at the test site. These payments totaled $1,178 in 1973. Petitioner deducted $1,178 in 1973 as employee business expense, which respondent disallowed.

50. *James V. Bittner and Maryann Bittner, docket No. 10157–75.*—Petitioners are husband and wife and during the taxable year 1973, and at the time of filing the petition herein, resided at 5900 West Tropicana, Space 306, Las Vegas, Nev.

During the taxable year 1973, petitioner James V. Bittner (hereinafter referred to as petitioner) was employed by REECO at the Nevada test site as a pipefitter and belonged to Pipefitters Union Local 525.

During 1973 petitioner always reported to work at area 6. REECO paid petitioner $8.50 for each day he reported to area 6 in addition to his regular salary, consisting of $7.50 "subsistence" and $1 "travel pay." These payments totaled $1,981.50 in 1973. Petitioner deducted $400 in 1973 as employee business expense, which respondent disallowed.

During the taxable year 1973 the petitioners paid $215.02 for medical insurance of which $107.51 is deductible as a medical expense under section 213.

51. *Clyde F. Flowers and Mary G. Flowers, docket No. 10158–75.*—Petitioners are husband and wife and during the taxable year 1973, and at the time of filing the petition herein, resided at 1347 Bledsoe Lane, Las Vegas, Nev.

Petitioner Clyde F. Flowers (hereinafter referred to as petitioner) has been working for REECO as a sheet metal foreman since 1962. He is a member of Sheet Metal Workers Union Local 88.

During the taxable year 1973, REECO paid petitioner, in addition to his regular salary, $8.50 for each day he reported to the test site, consisting of $7.50 "subsistence" and $1 "travel pay." These additional payments totaled $1,981.50 in 1973. Petitioner deducted $1,981.50 in 1973, as employee business expense, which respondent disallowed.

Petitioner rents permanent quarters at the test site at a cost of $14 per week. Petitioner normally stays at his rented quarters at Camp Mercury during the week, returning home only on weekends. On occasion, however, he returns to his home in Las Vegas during the week when he is able to take

off for a whole day. While employed by REECO during 1973, petitioner traveled each day from his quarters at Camp Mercury to control point 1 in area 6 where he would catch a company bus to his worksite at area 3.

While he kept a record of his meals and lodging as well as the mileage he traveled between his residence and the test site, petitioner limited his deduction for employee business expense to the amount of "subsistence" and "travel pay" he received during 1973.

OPINION

All employees of private contractors and Federal employees assigned to work at the test site receive, in addition to their regular salary, a daily or per diem allowance for each day they report for duty. The amount of the allowance is $5 per day when the reporting point is Camp Mercury and $7.50 per day when the reporting point is any forward area within the test site. Employees who are members of certain craft unions receive an additional allowance of $0.50 to $2.50 per day depending on the reporting point of the individual employee. Private sector employees receive an allowance based on the terms of the collective bargaining agreement under which they are employed. Federal employees receive an allowance pursuant to 5 U.S.C. sec. 5942 (1970).

The primary contention of petitioners is that the subsistence and onsite travel allowances paid to them during the years at issue are excludable from gross income under the provisions of section 119. They argue that the allowances were paid by the AEC for the convenience of the AEC and were not intended to be compensatory in nature, and that an allowance paid for the convenience of the employer and not intended to be compensatory is not taxable income. Respondent, to the contrary, asserts that the allowances paid to petitioners are not excludable under section 119 since the allowances were not intended to reimburse petitioners for the costs of their meals and lodging purchased at the test site, and because meals and lodging were not furnished for the convenience of the employer.

Our starting point is section 61(a) which broadly defines gross income to include all gains, regardless of their source. In defining gross income in such broad, sweeping language

Congress intended to tax all gains except those specifically exempted by other Code provisions. *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426 (1955); *Commissioner v. LoBue,* 351 U.S. 243 (1956). The per diem payments received by the petitioners from their respective employers clearly constituted a gain to each of the petitioners. Thus the allowances are includable in their gross incomes unless they can be excluded under another section.[5]

Petitioners stress that section 119 provides a basis upon which exclusion of the test site allowance may be grounded. It provides:

There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—

(1) in the case of meals, the meals are furnished on the business premises of the employer, or

(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.

The exclusion provided by section 119 is for the value of any meals or lodging furnished to the employee by his employer for the convenience of the employer. While there is still some question as to whether a cash allowance meets the requirements for exclusion laid down in section 119,[6] it is clear that if a cash allowance is provided in lieu of meals or lodging "in kind," the allowance must be paid for the express purpose of

---

[5] In their Supplemental Points and Authorities petitioners urge us to consider a line of rulings and case law dealing with income tax withholding on fringe benefits. In particular, they rely on *Stubbs, Overbeck & Associates v. United States,* 445 F.2d 1142 (5th Cir. 1971), which dealt with the question of whether certain per diem payments constituted "wages" within the meaning of sec. 3401, I.R.C. 1954. It was not concerned with whether the per diem payments constituted taxable income to the employees. We do not find the petitioners' arguments on this point persuasive.

[6] See generally *Saunders v. Commissioner,* 215 F.2d 768 (3d Cir. 1954), revg. 21 T.C. 630 (1954); *United States v. Barrett,* 321 F.2d 911 (5th Cir. 1963); *United States v. Keeton,* 383 F.2d 429 (10th Cir. 1967); *United States v. Morelan,* 356 F.2d 199 (8th Cir. 1966); *Wilson v. United States,* 412 F.2d 694 (1st Cir. 1969); *Burl J. Ghastin,* 60 T.C. 264 (1973); *Kowalski v. Commissioner,* 544 F.2d 686 (3d Cir. 1976), revg. per curiam 65 T.C. 44 (1975).

providing employees with meals and lodging at their worksites. Petitioners contend that the allowances they received from their respective employers were not compensatory in nature because they were paid merely to reimburse them for the costs which they incurred for meals and lodging purchased at the test site.

We disagree with this contention. The allowances were paid to private contractor employees pursuant to their collective bargaining agreements with the various labor unions and to Federal employees pursuant to 5 U.S.C. sec. 5942. Examination of the collective bargaining agreements between the various labor unions and the private contractors convinces us that the subsistence allowances received by these petitioners were not specifically paid to reimburse them for the expenses which they incurred for meals and lodging purchased at the test site. The language of 5 U.S.C. sec. 5942 provides insight into the reasons for its enactment. It reads as follows:

Notwithstanding section 5536 of this title, an employee of an Executive department or an independent establishment who is assigned to duty, except temporary duty, at a site so remote from the nearest established communities or suitable places of residence as to require an appreciable degree of *expense, hardship, and inconvenience, beyond that normally encountered in metropolitan commuting, on the part of the employee in commuting to and from his residence and such worksite,* is entitled, in addition to pay otherwise due him, to an allowance of not to exceed $10 a day. The allowance shall be paid under regulations prescribed by the President establishing the rates at which the allowance will be paid and defining and designating those sites, areas, and groups of positions to which the rates apply.

The statute refers to the additional costs and inconveniences associated with travel between the test site and the employees' residences. No mention is made of meals or lodging. Plainly the purpose of the allowance is to provide additional compensation in order to obtain and retain employees at the test site. There is no indication that Congress was concerned about providing reimbursement for meals and lodging purchased by employees at the test site. In our opinion the petitioners' argument under section 119 fails for the reason that the allowance paid to both private contractor and Federal employees was not for reimbursement of meals and lodging purchased at the test site.

An exclusion may be had under section 119 only where meals or lodging are furnished to an employee "for the convenience of the employer." The question of whether meals or lodging are furnished for the convenience of the employer is one of fact to be determined by an analysis of all the facts and circumstances in each case. Sec. 1.119–1(a)(1), Income Tax Regs.

Cases holding that meals or lodging were furnished for the convenience of the employer and thus excludable from gross income have involved situations where the employee's continued presence was necessary to enable him to perform his duties properly or to supervise others, or where the employee was required by his employer to be available for emergency calls. *Arthur Benaglia,* 36 B.T.A. 838(1937)(hotel employee); *Diamond v. Sturr,* 221 F.2d 264 (2d Cir. 1955) (hospital employee); *Caratan v. Commissioner,* 442 F.2d 606 (9th Cir. 1971) (supervisor); *United States v. Keeton,* 383 F.2d 429 (10th Cir. 1967) (policeman).

The instant cases do not involve individuals whose presence is constantly required. None of the petitioners are on call during their lunch hour. Petitioners purchased meals at the test site or brought meals from home depending on their personal preferences. Their situation is no different from that of construction workers who either, because of the lack of nearby eating facilities or a sufficiently long lunch break, decide to bring a lunch from home, or purchase a quick meal from a nearby vending machine. The cash allowances provided to these petitioners do not constitute meals or lodging furnished "for the convenience of the employer."

The same can be said for those meals and lodging purchased when petitioners remained overnight at the test site. Expenses for those meals and lodging were incurred as the result of personal preferences, and not "for the convenience of the employer."

Accordingly, we hold that the cash allowances paid to petitioners do not meet the requirements for exclusion contained in section 119.[7]

---

[7] Having found that petitioners do not meet the requirements for exclusion contained in sec. 119, we need not discuss the issue of whether or not meals and lodging must be furnished "in kind" in order to qualify for exclusion under sec. 119.

Petitioners' secondary contention is that the expenses they incurred in traveling between their homes and their job locations at the test site constitute deductible business expenses under section 162. Respondent, on the other hand, contends that such expenses are personal and thus nondeductible under section 262.

It is well established that the expenses incurred in traveling between one's residence and regular place of employment are nondeductible personal commuting expenses. Sec. 1.262–1(b)(5), Income Tax Regs.; *Commissioner v. Flowers*, 326 U.S. 465 (1946). For petitioners to prevail, they must be able to differentiate their situation from that of the average "commuter."

Petitioners agree with the general rule that commuting expenses are not deductible. However, they argue that their situation is somewhat different from that of the usual suburban commuter who travels only a few miles back and forth to work each day.

The test site is located in a remote area of the Nevada desert. The location was chosen because it satisfied the need for a proving ground in an area. of low population, good weather conditions, Government-owned land, accessible labor and supplies, and security. Its isolation from major population centers was intentional. Las Vegas, the nearest habitable community, is 65 miles from the test site. Most petitioners travel on a daily basis, 5 days a week, between their homes in the Las Vegas area and their respective work locations at the test site. Some petitioners travel as much as 200 miles each day in getting to and from the test site.

Petitioners assert that these unique conditions call for the application of a different rule, i.e., a line must be drawn between "ordinary commuting" and situations like this in which the drive to work involves much greater distances. They rely on *Wright v. Hartsell*, 305 F.2d 221 (9th Cir. 1962), which involved a nonitinerant journeyman pipefitter and plumber. His regular place of abode since 1950 was Pocatello, Idaho. All of Hartsell's jobs from June 1954 until June 1956 were at the Atomic Energy Commission site in southeastern Idaho. He was a construction worker and was employed by contractors who were engaged in various construction projects. In that 2-year period he had four jobs with three

different contractors. The AEC site covers an area of more than 1,500 square miles located in a vast desert remote from any town or place of habitation. It was 70 miles from the taxpayer's residence in Pocatello.

Hartsell traveled back and forth from Pocatello to the AEC site each day. During 1955 he received from his employers a travel allowance of $1,356. On his 1955 Federal income tax return he treated such amount as travel expense and deducted it from gross income. The Commissioner disallowed the deduction on the ground that Hartsell's travel expenses were not deductible because they were not incurred "while away from home," and that it was immaterial that the expenses were incurred because he was unable to live at or near the AEC site. The Court of Appeals disagreed and stated at page 225:

It is difficult to conceive of a situation which makes it more necessary for a taxpayer to incur travel expenses than the unfitness of the work area for civilized habitation. Such a taxpayer has less choice with respect to his place of abode than the taxpayer who prefers not to live in his work area simply because of the temporary nature of his employment there; his situation is similar to that of the public official who must maintain his home elsewhere, or of the taxpayer with two widely separated jobs, who obviously cannot live simultaneously in both localities. We conclude that a taxpayer's inability to live near his job site is a valid ground for deduction as travel expense of the resulting cost of his transportation, food and lodging.[4] [Fn. omitted.]

Thus, the Court of Appeals in *Hartsell* allowed the taxpayer to deduct under section 162(a)(2) his costs associated with traveling back and forth to work. This was permitted on the theory that he was "away from home" when he traveled from Pocatello to the AEC site.

Unfortunately for petitioners, the precedential value of *Wright v. Hartsell, supra,* has been nullified by subsequent decisions of the Supreme Court and the Court of Appeals for the Ninth Circuit. In *United States v. Correll,* 389 U.S. 299 (1967), the Supreme Court held that a taxpayer was not "away from home" within the meaning of section 162(a)(2) unless the trip required sleep or rest, thus excluding expenses incurred in daily trips to and from work. The authority of *Wright v. Hartsell, supra,* was further weakened in *Smith v. Warren,* 388 F.2d 671 (9th Cir. 1968), when the Ninth Circuit disallowed a deduction under section 162(a) to a ship pilot for

expenses incurred in traveling between his home and the piers where he worked on the Seattle waterfront even though the taxpayer could not live at the piers and was required to live elsewhere. Finally, in *Sanders v. Commissioner*, 439 F.2d 296 (9th Cir. 1971), the Ninth Circuit rejected its initial position in *Hartsell* and held that the inability of a taxpayer to live near his jobsite is not a valid ground for allowing a travel expense deduction for his transportation to and from his worksite.

Respondent relies on a long line of cases[8] holding that the expenses incurred in traveling between one's residence and place of employment are personal rather than business expenses. He also points out that the facts in *Emberton v. United States*, 73–2 USTC par. 9575 (D. Nev. 1973), affd. in an unpublished opinion (9th Cir. 1975), are indistinguishable from the facts presented in these consolidated cases. In *Emberton* the taxpayer was employed at the Nevada test site by Reynolds Electrical & Engineering Co., Inc. On or about April 13, 1971, taxpayer filed a joint Federal income tax return with the Internal Revenue Service for 1970. He did not claim deductions for his expenses in traveling to and from his employment at the test site on his original 1970 income tax return. On or about December 12, 1971, however, he filed an amended joint income tax return for that year and claimed a deduction in the amount of $2,943 for expenses incurred in traveling between his residence in Las Vegas, Nev., and his place of employment at the Nevada test site. The claimed deduction was disallowed by the Commissioner. It was calculated on the basis of 15,000 miles traveled at 12 cents per mile and 12,700 miles at 9 cents per mile for a total of 27,700 miles and a deduction of $2,943. The 27,700 miles claimed by the taxpayer represented round trip mileage driven from his home in Las Vegas to his job at the test site during 1970. On some days he reported to checkpoint 1 on the test site and on other days he reported to Camp Mercury. It was 184 miles (round trip) from the taxpayer's home to checkpoint 1 and 144 miles (round trip) from his home to Camp Mercury.

---

[8] *Fausner v. Commissioner*, 413 U.S. 838 (1973); *Commissioner v. Flowers*, 326 U.S. 465 (1946); *United States v. Tauferner*, 407 F.2d 243 (10th Cir. 1969); *Sanders v. Commissioner*, 439 F.2d 296 (9th Cir. 1971); *Smith v. Warren*, 388 F.2d 671 (9th Cir. 1968); *Steinhort v. Commissioner*, 335 F.2d 496 (5th Cir. 1964); *Edmerson v. United States*, 72–2 USTC par. 9702 (9th Cir. 1972).

During 1970 the taxpayer was paid a subsistence allowance by his employer for each day he reported to his job at the test site. The subsistence was $7.50 per day if he reported to checkpoint 1 and $5 per day if he reported to Camp Mercury. He received $1,655 in "subsistence pay" for 1970.

Like the petitioners here, the taxpayer in *Emberton* contended that the expenses he incurred in traveling between his residence in Las Vegas and his job at the test site constituted deductible business expenses under section 162. The District Court, in denying the deduction, said: "A taxpayer's cost of commuting or driving to and from work is not a deductible business expense under Section 162 but rather is a nondeductible personal expense under Section 262 of the Internal Revenue Code." It followed the decisions in *Sanders v. Commissioner*, 439 F.2d 296 (9th Cir. 1971), and *Edmerson v. United States*, 72-2 USTC par. 9702 (9th Cir. 1972), and found that the taxpayer was not entitled to a deduction for expenses incurred in traveling from his home in Las Vegas to his job at the Nevada test site. In explaining the rationale behind its decision, the District Court referred to the following language appearing in *United States v. Tauferner*, 407 F.2d 243, 246 (10th Cir. 1969):

There is no convincing way to distinguish these expenses from those of the suburban commuter. As the Supreme Court said in *United States v. Correll* [68–1 USTC par. 9101], 389 U.S. 299, 88 S. Ct. 445, 19 L. Ed. 2d 537, any rule in this area must make some rather arbitrary distinctions. The nature of the work engaged in, the distance traveled, the mode of transportation, the degree of "necessity" appear to be unsatisfactory guides with any degree of consistency and certainty. The basic and unmodified fact of whether the taxpayer is going to the place where he begins work or is returning from the place where he ceases work should be determinative. Such travels are expenses within Section 262 as "personal, living or family expenses" whether in an urban, suburban or rural setting. They are not ordinary business expenses under Section 162(a).

*Emberton* involved a taxpayer who was employed at the same location and was paid the same allowance as the petitioners in these consolidated cases. Here, as in *Emberton*, we are concerned with travel between the Nevada test site and the Metropolitan Las Vegas area. *Emberton* is strong authority for holding that such expenditures are simply nondeductible personal commuting expenses. In short, we think petitioners' attempt to distinguish *Emberton* is uncon-

vincing. The cases are indistinguishable on the facts and on the applicable law.

Travel expenses which arise from going to and from work on a daily basis are not ordinary business expenses deductible under section 162(a)(2) regardless of the distance traveled or the availability of housing at or near the work site. No deduction is allowable under section 162(a)(2) to those petitioners who never remained overnight at the test site for sleep or rest. *United States v. Correll,* 389 U.S. 299 (1967).

We likewise disagree with petitioners that the expenses of some of them who occasionally remained *overnight* at the test site should be deductible under section 162(a)(2). The deduction provided in section 162(a)(2) is for traveling expenses incurred while away from home *in the pursuit of a trade or business.* The deduction is limited to those expenses incurred for strictly business reasons. While commonsense might dictate a decision to remain at the test site rather than face the prospect of a long drive home after several hours of overtime work, the choice was clearly a personal one. None of the employees at the test site were required to remain there overnight. We see no difference between this situation and that of the individual who works on one side of town and lives on the other side and yet chooses, for personal reasons, to rent a room at a hotel or motel near his office rather than return to his home across town after work. The decision to remain overnight does not serve to convert what otherwise would be considered nondeductible commuting expenses into ordinary and necessary business expenses deductible under section 162.

The traveling expenses of those petitioners who chose to remain overnight at the test site must be disallowed for another reason. The deduction provided for by section 162(a)(2) is only for those expenses incurred "while away from home." Respondent asserts that petitioners' "tax home" is the entire area of the test site and thus they were not "away from home" when they traveled from Las Vegas to the test site on a daily basis. Petitioners counter with the argument that their "tax homes" were their residences in Las Vegas and vicinity, and that it is unreasonable to determine that a location covering as large an area as the test site (1,350 square miles) can be considered the "tax home" of each of the individual petitioners.

Although we recognize that in *Six v. United States*, 450 F.2d 66 (2d Cir. 1971), the Court of Appeals applied a different test for determining "tax home," the Court of Appeals for the Ninth Circuit has held that, where employment is indefinite, a taxpayer's "tax home" is where he is principally employed rather than his place of residence. See *Wills v. Commissioner*, 411 F.2d 537 (9th Cir. 1969). In addition, we have also treated "home" for tax purposes as the taxpayer's principal place of business. *Mort L. Bixler*, 5 B.T.A. 1181 (1927); *Ronald D. Kroll*, 49 T.C. 557 (1968); *George Montgomery*, 64 T.C. 175 (1975), affd. 532 F.2d 1088 (6th Cir. 1976). None of the petitioners work in all parts of the test site. In fact, the evidence shows that most of the petitioners have fixed reporting points. While the actual work locations of some petitioners were as far as 40 miles from their reporting points, their transportation beyond the reporting points was usually provided by their employers. In these circumstances we conclude that the "tax home" of each petitioner in these consolidated cases was the location to which each reported for work at the test site. Consequently, none of the petitioners was "away from home" within the meaning of section 162(a)(2).

Petitioners argue alternatively that the only area of the test site which can properly be considered their "tax home" is Camp Mercury. The costs of transportation incurred after petitioners pass through the gates at Camp Mercury, they contend, should be deductible under section 162 because the entire test site is too large an area to be considered their "tax home." Respondent says that despite the fact that some of petitioners' travel is done within the test site, "the basic and unmodified fact of whether the taxpayer is going to the place where he begins work or is returning from the place where he ceases work should be determinative."

We agree with respondent. This argument was considered and rejected in *Walter J. White*, T.C. Memo. 1972–67, involving a taxpayer who was employed as a cryogenics technician by the Western Electric Co. at the White Sands Missile Range in New Mexico. He traveled daily between his residence in El Paso, Tex., and the jobsite at the range. The distance involved was about 70 miles. He was required to work at night five times every 2 weeks. Respondent deter-

mined an income tax deficiency for 1965, based on the disallowance of automobile expenses incurred by the taxpayer in traveling between his home in El Paso and his place of employment at the missile range and deducted by him under the purported authority of section 162. The taxpayer argued alternatively that he be allowed to deduct the cost of his trip from Las Cruces, N. Mex. (the nearest habitable community to the jobsite), to the missile range and back to Las Cruces only on those days when he was required to work at night and that he be allowed to deduct the cost of travel between the main gate of the range and his worksite for all of the days he worked. In disallowing the claimed deduction, this Court said: "Although we sympathize with petitioner's plight, we conclude that he is not entitled to the claimed deduction *even to the limited extent represented by the cost of travel within the Range.* [Emphasis added.]" The situation here is no different from that in *Walter J. White, supra.* The basic and unmistakable fact is that the petitioners are "commuting" to and from their work locations, and such expenses are personal and nondeductible under section 262.

Petitioners have requested findings of fact that the employment of certain petitioners was temporary and that the expenses incurred in connection with such employment are deductible for that reason. They rely on the general rule that where a taxpayer accepts temporary employment at a location away from his residence, he may deduct the expenses incurred at that location as traveling expenses. The evidence herein merely indicates that their employment was terminated or that their daily reporting point was transferred from the test site to downtown Las Vegas. There is no evidence in this record tending to show that the employment of these petitioners was other than indefinite. The burden falls on the petitioners to prove that their employment was temporary. *Welch v. Helvering,* 290 U.S. 111 (1933). They have failed to meet that burden.

In addition to their transportation expenses, several petitioners incurred expenses for meals and lodging on those occasions when they remained overnight at the test site. They contend that the costs of food and lodging incurred when they remained overnight are deductible under section 162(a)(2); while respondent contends that such expenses are not

deductible because they were not incurred "while away from home in the pursuit of a trade or business."

Again we agree with respondent. We have found that the automobile expenses of those petitioners who remained overnight at the test site are not deductible since they were neither incurred "while away from home" nor "in the pursuit of a trade or business." We disallow the claimed expenses for meals and lodging for the same reasons.

Finally, the petitioners claim that Federal employees who work at the test site have been given preferential treatment in the return selection and auditing process. They contend that individuals who work for private contractors at the test site have been the victims of unfair discrimination. The discrimination, they argue, resulted from a private ruling issued to the National Oceanic and Atmospheric Administration by the Baltimore District Director. This is apparently based on the low incidence of disallowance with respect to Federal employees coupled with the private ruling to one Federal agency.

They urge that the remedy for this alleged discrimination is for us to declare void the statutory notices of deficiencies issued to the individual petitioners, relying on *International Business Machines Corp. v. United States*, 343 F.2d 914 (Ct. Cl. 1965).

The record in these consolidated cases discloses no evidence of discrimination. The only testimony with respect to this allegation was given by Arlene Quick, group manager of the Las Vegas office audit group which conducted the audits involving most of these petitioners. She testified that no preferential treatment was given to Federal employees in the return selection process or the audit process. We think the reason why few Federal employees were audited or selected for audit is due to the fact that only a very small percentage (less than 2 percent) of all the test site workers were employees of the Federal Government. In our judgment the petitioners have failed to establish any discrimination. Therefore, the relief they seek is denied.

To reflect the conclusions reached herein with respect to the controverted issues and various concessions made by the parties,

> *Decisions in all cases will be entered under Rule 155.*

