ROBERT L. EDMANDS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Edmands v. Commissioner
Docket No. 2311-85
United States Tax Court
T.C. Memo 1989-507; 1989 Tax Ct. Memo LEXIS 510; 58 T.C.M. (CCH) 167; T.C.M. (RIA) 89507; September 19, 1989
Robert L. Edmands, pro se. Jerry L. Leonard, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioner's *512 1982 Federal income tax in the amount of $ 23,844, together with additions to tax pursuant to sections 6661, [1] 6653(a)(1) and 6653(a)(2) in the respective amounts of $ 1,240, $ 1,192 and 50 percent of the interest due on the underpayment. After concessions, [2] the issues for decision are: (1) whether petitioner's snowplowing, selling personal computers, and fishing activities constituted activities "not engaged in for profit" within the meaning of section 183; (2) whether petitioner is entitled to an investment tax credit, pursuant to section 38, with respect to a pickup truck and snowplow; (3) whether petitioner is entitled to deduct travel and telephone expenses with respect to his employment on the Trans-Alaska pipeline; (4) whether petitioner is liable for the additions to tax for negligence, pursuant to sections 6653(a)(1) and (a)(2); and (5) whether petitioner substantially understated his 1982 tax liability, such that he is liable for the addition to tax pursuant to section 6661. *513 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. At the time of filing his petition, petitioner resided in Anchorage, Alaska. Petitioner has been employed by Alyeska Pipeline Service Company (Alyeska) since 1977. During 1982, he worked as a technician at Pump Station 10, a remote site on the Trans-Alaska pipeline. Petitioner's work schedule was comprised of 14-day periods -- eight days living in employer-provided housing at the work site, followed by six days off at his home in Kasilof, Alaska, before starting another eight days at the work site. To go from his home in Kasilof to Pump Station 10, petitioner would drive 22 miles to Kenai, Alaska, where he would catch a commercial flight to Anchorage. From Anchorage, he would board a company chartered plane which would take him to Pump Station 10. At the end of his eight days at Pump Station 10, he would board a company-chartered plane which would return him to Anchorage. Petitioner received $ 60 every 14 days as "pipeline travel pay." The same amount was paid to all employees similarly situated to *514 petitioner for their travel time from Anchorage to the work site regardless of where they chose to live. Petitioner reported all pipeline travel pay received in 1982, and he deducted $ 1,524.90, the cost of 26 round-trip airline tickets at $ 58.65 each, as an employee business expense. No documentation to substantiate such expense was presented. In addition to his travel expenses, petitioner deducted $ 489.25 as an employee business expense with respect to telephone charges. He claims that because he was constantly on call when not at Pump Station 10, he was required to have a phone in his home. No evidence corroborating petitioner's claim was introduced. Petitioner admitted that he would have had a home phone even if he were not "on call." To support the deduction claimed for his home phone, petitioner presented bills in an amount substantially in excess of the claimed deduction. Although petitioner claims he did not make personal use of his phone, the record is silent as to how the amount of the claimed deduction was determined. In addition to his employment by Alyeska, petitioner claims to have engaged in three other businesses during 1982, all under the name of Double *515 "L" Enterprises. These activities included snowplowing, selling home computers, and fishing. In connection with his snowplowing activity, petitioner purchased a 1982 pickup truck in July of 1982, which he had equipped with a snow plow. Petitioner stated on his return that he actively operated this business throughout 1982. The truck was not licensed as a commercial vehicle. Petitioner used the truck and snowplow to plow his own driveway. He did not list the availability of his snowplowing services in the telephone directory, nor did he in any manner advertise such services other than by word of mouth. With respect to his snowplowing activity, petitioner reported income and claimed deductions on Schedule C of his 1982 tax return as follows: Income
$   256.00 Car and Truck Expense
$   759.51
Depreciation
2,985.39
Insurance
304.04
License
35.00
Utilities and Phone
324.46
Total Expenses
($ 4,408.40)
Net Loss
($ 4,152.40)
On his 1982 return, petitioner claimed an investment tax credit with respect to the truck and snowplow in the amount of $ 1,601.90. The second activity in which petitioner claims to have engaged, and for *516 which he seeks to deduct his losses, is home computer sales. Petitioner, who had worked with computers at his job with Alyeska, purchased a computer for his personal use in 1981. During 1982, he was introduced to Tronics Sales Corporation (Tronics) by a coworker. Petitioner contends that he began his home computer sales activity in January or February of 1982. He claims that he planned to sell computers and software door-to-door and that he would order the equipment requested by his customers from Tronics. When the equipment arrived, he intended to install it and service it for the customer. According to petitioner, the computers he planned to sell would cost his customers only $ 99, but with the necessary peripheral hardware, the total cost to his customers would range from $ 800 to $ 1,200. Petitioner advertised his computer sales activity in the newspaper and on bulletin boards in nearby cities. On November 2, 1982, petitioner ordered six computer games from Tronics at a total cost of $ 176. A month later, he ordered a Texas Instruments personal computer, a terminal emulator, and a "joy stick" from Tronics at a total cost of $ 430.35. He claims to have purchased the computer *517 equipment and software for sales demonstration purposes. The receipts for both orders listed petitioner as a "distributor." Petitioner sold no computers and thus derived no "income" from such activity in 1982. However, in early 1983, petitioner received $ 20.23 as a "commission" from his purchase of the computer games and equipment, which was erroneously reported on his 1982 return. With respect to his computer sales activity, petitioner reported income and claimed deductions on Schedule C of his 1982 tax return as follows: Income
$    20.23 Depreciation
$   183.69
Insurance
48.72
License
25.00
House Costs
499.93
Supplies
1,740.45
Utilities and Telephone
631.98
Total Expenses
[3] ($ 3,129.77)
Net Loss
($ 3,109.54)
Both the depreciation and house costs deductions relate to a room in petitioner's house which he claims to have used exclusively for purposes of demonstrating the computer and software. The "supplies" expense related, in part, to the computer petitioner purchased from Tronics that he was using for *518 demonstration purposes. Petitioner contends he ceased his computer sales activity at the end of 1983 when Texas Instruments took the computer model that petitioner was attempting to sell off the market. After he ceased his computer sales activity, petitioner gave the computer to his sister. Commercial halibut fishing is the final Double "L" Enterprises activity in which petitioner claims to have engaged. Petitioner has enjoyed fishing since he was a young boy. During 1980, the first year in which petitioner engaged in his fishing activity, he sold no fish. In 1981, petitioner sold between $ 100 and $ 500 worth of fish to friends and to people at the dock who asked whether he had any fish to sell. In 1982, petitioner purchased a used boat which he claims he thereafter used solely for his commercial fishing activity. He used the pickup truck (purchased in furtherance of his snowplowing activity) to haul his boat to the water at Homer, Alaska. He fished without a crew. Petitioner reported no income from his fishing activity in 1982; he admitted that the commercial fishing season for halibut lasted only four to six days each summer. From his fishing activity, he claimed the *519 following expenses on Schedule C of his 1982 tax return: Depreciation
$ 2,980.00
Insurance
206.00
Licenses
Vessel
20.00
Commercial
30.00
Repairs
1,435.63
Supplies
2,000.00
Total Deductions
$ 6,671.63
The engine on petitioner's boat malfunctioned the first time the boat was taken out fishing in 1982; therafter, petitioner spent the rest of the 1982 season attempting to get parts for the engine and repairing the boat. With respect to the engine malfunction, petitioner claimed a repair expense in the amount of $ 1,435.63. The supplies expense relates, in part, to a second repair to the boat which was necessitated when another boat hit petitioner's boat. Petitioner did not explain how this second mishap occurred since his boat was not afloat again in 1982 after the engine malfunction. In support of his claimed Double "L" Enterprises deductions, petitioner presented a ledger page, which he prepared in early 1983, on which he listed the payee and the amounts of the expenses connected with his various activities. He presented two duplicative Alaska Business licenses for 1982 which cost $ 25 each. Except for telephone bills, petitioner *520 presented no receipts, bills or canceled checks in support of his claimed deductions. Petitioner reported wage income of $ 65,334.88 from his position as a technician on the Trans-Alaska pipeline. Because of the aforementioned claimed deductions, including the itemized deductions conceded by respondent as well as a claimed charitable deduction for a contribution to the Universal Life Church conceded by petitioner, petitioner reported a tax liability of only $ 285.10 on his 1982 return. Respondent disallowed petitioner's expenses with respect to his three Double "L" Enterprises activities as well as the claimed employee business expenses and charitable deduction. OPINION At the outset we note that deductions are a matter of legislative grace, and taxpayers are required to maintain and present for examination books and records to support their claims. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Furthermore, respondent's determinations are presumptively correct, and petitioner bears the burden of proving otherwise by a preponderance of the evidence. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a). The first issue we shall *521 address is whether petitioner is entitled to deduct claimed expenses with respect to his involvement in the three Double "L" Enterprises activities, i.e., snowplowing, fishing, and selling of home computers. He is entitled to deduct such expenses if he proves that they were incurred in carrying on a trade or business or were incurred for the production of income. Sections 162 [4] and 212. [5] These sections require that the trade or business or income producing activity be engaged in for profit. Pursuant to section 183(b), certain limited deductions are also available with respect to an activity "not engaged in for profit," which section 183(c) defines as an activity other than one with respect to which deductions are allowable under section 162 or under paragraphs (1) or (2) of section 212. [6]
*522 To establish that an activity is one engaged in for profit, petitioner must show that he engaged in the activity with an actual and honest objective of making a profit. Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Dreicer v. Commissioner, 78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Although petitioner need not prove that his expectation of profit was reasonable, he must prove that the activity was entered into and continued with the objective of making a profit. Section 1.183-2(a), Income Tax Regs.; Beck v. Commissioner, 85 T.C. 557, 569 (1985); Flowers v. Commissioner, 80 T.C. 914, 931 (1983); Dreicer v. Commissioner, supra.Within this context, "profit" means an economic profit independent of tax savings. Estate of Baron v. Commissioner, 83 T.C. 542, 557-559 (1984), affd. 798 F.2d 65 (2d Cir. 1986). The issue of whether petitioner engaged in his various Double "L" Enterprises activities with the requisite profit objective is a question of fact to be resolved on the basis of all the surrounding circumstances. *523 Finoli v. Commissioner, 86 T.C. 697, 722 (1986); Beck v. Commissioner, 85 T.C. at 570; Flowers v. Commissioner, 80 T.C. at 931-932; Lemmen v. Commissioner, 77 T.C. 1326, 1340 (1981). Although petitioner stated that he engaged in his various activities with the objective to make a profit, we give greater weight to objective factors than to petitioner's bare statement of his intent. Section 1.183-2(a), Income Tax Regs.; Beck v. Commissioner, supra; Flowers v. Commissioner, supra; Siegel v. Commissioner, 78 T.C. 659, 699 (1982). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of nine objective factors relevant to the determination of whether an activity is engaged in for profit. The nine factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carring on other similar or dissimilar *524 activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. Section 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986). Considering the record as a whole, we conclude that petitioner did not engage in any of the Double "L" Enterprises activities with the requisite profit objective. Petitioner did not conduct his activities in a businesslike manner. He presented no evidence of having devoted any significant time or effort to the activities. With respect to his snowplowing activity, petitioner attempted to deduct substantial amounts of depreciation with respect to a truck and snowplow which he used to plow his own 75-foot driveway. He did not advertise his snowplowing services, nor did he place a listing in the telephone directory. In addition, although petitioner claimed *525 to have been engaged in his snowplowing business for the entire 12 months of 1982, he did not purchase his truck and plow until July 1982. Further, the record is devoid of any facts indicating that this trade or business existed prior to 1982. With respect to his home computer sales activity, petitioner did not order the computer he claims to have used for demonstrations until December 1982. It is unclear whether petitioner actually received the computer in 1982. Nonetheless, he claimed expenses in the amount of $ 683.62 relating to one room in his home, which he claims he used for demonstration purposes. Moreover, he did not sell any computers. Finally, petitioner claims to have engaged in the fishing business in 1982. However, he went fishing only one day in 1982 and caught no fish. Each of the activities in which petitioner engaged was either sporadic or recreational and not conducted for profit. Therefore, petitioner is entitled to deduct the expenses from Double "L" Enterprises activities only to the extent specified in section 183(b). Petitioner also claimed an investment tax credit with respect to his pickup truck and snowplow. Section 38 allows a credit for investment *526 in certain depreciable property. The credit is allowable on "section 38 property" -- generally tangible personal property which is subject to the allowance for depreciation. Sec. 48(a)(1). Depreciation is allowable on property which is subject to wear and tear or obsolescence and used in a trade or business or for the production of income. Sec. 167(a). However, because petitioner's snowplow and truck were used neither in a trade or business nor for the production of income, he is not entitled to an investment tax credit. The next issue is whether petitioner is entitled to deduct the cost of his round-trip airline tickets between Kenai and Anchorage. The costs of commuting between the taxpayer's residence and his place of employment are nondeductible personal expenses, regardless of the distance, Commissioner v. Flowers, 326 U.S. 465, 470 (1946); Coombs v. Commissioner, 608 F.2d 1269 (9th Cir. 1979), affg. in part 67 T.C. 426 (1976); sections 1.162-2(e) and 1.262-1(b)(5), Income Tax Regs. On the other hand, the cost of travel between two places of employment is deductible. Heuer v. Commissioner, 32 T.C. 947, 953 (1959), *527 affd. per curiam 283 F.2d 865 (5th Cir. 1960). Because we have concluded that petitioner's involvement in his various Double "L" Enterprises activities did not constitute profit activities, Kasilof was not one of petitioner's places of employment. Accordingly, the airfare expenses incurred by petitioner from Kenai to Anchorage, and back, are nondeductible personal expenses. We next address the issue of whether petitioner is entitled to a deduction, as an employee business expense, for expenses he incurred in having a telephone in his home. Petitioner bears the burden of proving the extent to which his home telephone expense related to his business, Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a). At trial, he admitted that he would have had a home phone even if he were not on call with Alyeska. We conclude that he has failed to meet his burden of proof concerning the business use of the phone. Therefore, respondent's disallowance of the claimed deduction for home phone expenses is sustained. We next address the negligence addition to tax determined by respondent. An addition to tax equal to 5 percent of the underpayment is imposed if *528 any part of an underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(1). Section 6653(a)(2) provides for a further addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of proving that the underpayment was not due to negligence or intentional disregard of rules or regulations. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972); Rule 142(a). He failed to do so. Petitioner sought to deduct clearly personal expenses under the pretext that such expenses were incurred in pursuit of a trade or business. He presented no evidence to prove that, in claiming such personal expenses, he was exercising due care; thus, respondent's determination for additions to tax under sections 6653(a)(1) and (a)(2) is sustained. The final issue is whether petitioner *529 is liable for the addition to tax pursuant to section 6661. Section 6661, as amended by section 8002 of the Omnibus Budget Reconciliation Act of 1986, provides that taxpayers whose income tax returns contain substantial understatements of income tax may be liable for additions to the tax equal to 25 percent of the underpayment attributable to such understatements. See Pallottini v. Commissioner, 90 T.C. 498 (1988). The addition to tax is applicable where the amount of understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return, or (2) $ 5,000. Section 6661(b). The amount of the section 6661 addition to tax can, however, be reduced by application of section 6661(b)(2)(B). Section 6661(b)(2)(B) provides for the reduction of an understatement "by that portion of the understatement which is attributable to": (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. In general, items for which there *530 is adequate disclosure are treated as if such items were shown properly on the return for the taxable year in computing the amount of tax shown on the return for purposes of section 6661. Section 1.6661-4(a), Income Tax Regs. Thus, the tax attributable to such items is not included in calculating the amount of understatement for the year. The statute does not set forth what constitutes "adequate disclosure on the return" of "relevant facts affecting the item's tax treatment" for non-tax shelter items such as those involved herein. However, in Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987), we stated that "the requirement of adequate disclosure on the return can * * * be satisfied by providing on the return sufficient information to enable respondent to identify the potential controversy involved." See S. Rept. No. 97-494 at 274 (1982). The regulations state that the Commissioner may by revenue procedure prescribe the circumstances in which information provided on the return will constitute adequate disclosure for purposes of section 6661. Section 1.6661-4(c), Income Tax Regs. The first of these revenue procedures was Rev. Proc. 83-21, 1983-1 C.B. 680, *531 which was applicable for returns filed in 1983. Rev. Proc. 83-21 provides that for purposes of reducing any understatement of tax under section 6661, disclosure on the return of various items with no further statement constitutes adequate disclosure. Except for the charitable deduction for the $ 24,882.89 contribution to the Universal Life Church (which petitioner conceded), all of the items disallowed by respondent were adequately disclosed on the return and appear to comply with Rev. Proc. 83-21. Petitioner neither adequately disclosed nor had substantial authority for his contribution to the Universal Life Church. Therefore, there is an understatement of income tax. Assuming such understatement of income tax constitutes a "substantial understatement" of income tax (within the purview of section 6661(b)(1)) for 1982, petitioner is liable for the section 6661 addition to tax. To reflect the foregoing and concessions by respondent, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent conceded that petitioner is entitled to itemized deductions totaling $ 13,115.21, subject to any required computational adjustments as a result of our determination of the issues for decision. Petitioner conceded at trial that he is not entitled to a claimed charitable deduction for a contribution to the Universal Life Church in the amount of $ 24,882.89.↩
3. Because of a mathematical error, petitioner overstated the expenses and losses on his return by $ 631.98.↩
4. Section 162 provides, in relevant part, as follows: (a) IN GENERAL. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ↩
5. Section 212 provides, in relevant part, as follows: In the case of an individual there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * * ↩
6. Section 183 provides, in relevant part, as follows: (a) GENERAL RULE. -- In the case of an activity engaged in by an individual * * *, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) DEDUCTIONS ALLOWABLE. -- In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed -- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).↩