T.C. Memo. 2008-131

UNITED STATES TAX COURT

AUSTIN D. YANKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22120-05.                    Filed May 15, 2008.

Austin D. Yanke, pro se.

<u>John D. Davis</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined a $4,812 deficiency in petitioner's 2001 Federal income tax.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 2001.

The issue for decision is the deductibility of $27,294 in travel expenses (including meal and lodging expenses) petitioner

incurred in California while training to qualify as a journeyman electrical power lineman.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in Idaho, a resident of the same home in which petitioner was raised. In 1997, petitioner graduated from high school.

In 1998, petitioner enrolled at the Northwest Lineman College in Meridian, Idaho, in a 3-month course offering training to become an electrical power lineman (lineman). Upon completion of this course, petitioner joined the Boise local union of the International Brotherhood of Electrical Workers (IBEW) as an apprentice lineman.

In August 1999, to qualify as a journeyman lineman and also to seek employment in California, which offered more employment opportunities for union linemen than were available in Idaho (a right-to-work State), petitioner enrolled in a California/Nevada-based (Cal/Nev) journeyman lineman training program sponsored by the National Electrical Contractors Association (NECA) and by IBEW. A similar IBEW and NECA-sponsored program was available to petitioner in Idaho, but petitioner chose to enroll in the Cal/Nev program.

The Cal/Nev journeyman lineman training program, which petitioner began in August 1999, lasted 3-1/2 years.

Participants in the program were required to work for various electrical power companies in California and/or Nevada during the entire 3-1/2 years.

As part of the journeyman lineman training program in which petitioner enrolled and on the basis of the employment needs of NECA contractors located in California and Nevada, the linemen, including petitioner, were assigned to work with contractors at particular job sites.  When a job was finished and the contractor no longer needed the linemen, the linemen were reassigned to another NECA contractor in California or Nevada.  Petitioner was assigned work only in California.

The schedule below indicates the dates of petitioner's employment during his journeyman lineman training, the contractor for whom petitioner worked, if known, and the California cities in which petitioner's job sites were located:

| Dates of Employment | Contractor | Location of Job Site |
|---|---|---|
| Jan.--Apr. 2000 | --- | San Diego |
| May--July 2000 | --- | Moorepark |
| Aug.--Oct. 2000 | Hot Line Construction | Valencia |
| Jan.--Apr. 2001 | Hot Line Construction | Valencia |
| June--July 2001 | Hot Line Construction | Valencia |
| Aug.--Nov. 2001 | Par Electrical | Pacifica |
| Jan. 2002 | Par Electrical | Pacifica, Bakersfield, & Sacramento |
| Feb. 2002 | --- | Sacramento, Lakeport, & Chico |
| Mar.--May 2002 | --- | Chico & Ukiah |
| June--July 2002 | --- | Ukiah & Grass Valley |
| Aug.--Oct. 2002 | --- | Grass Valley & Willits |

In 2001 and over the years, petitioner has maintained a room in his parents' home in Boise, in which petitioner has kept clothes and furniture, and petitioner has parked on his parents' property a motorcycle, a boat, and two snowmobiles.

During his journeyman lineman training in California and through the end of 2002, petitioner lived in a fifth-wheel travel trailer which he parked near each job site. When a job was finished or when he was given time off, petitioner often would return to his parents' home in Boise until he was notified of his next job site in California. In 2001, petitioner spent approximately 45 days in Boise and the balance of his time in California working at job sites.

The evidence is unclear as to whether petitioner paid rent to his parents for use of the room he maintained in his parents' home in 2001.

In the fall of 2002, upon qualifying as a journeyman lineman, petitioner committed to maintaining his union membership as a journeyman lineman for at least the following 4 years during which petitioner committed to working only for union-approved contractors wherever employed in the United States.

For the journeyman lineman training in California, petitioner paid no tuition or other fees, and while being trained in California as a journeyman lineman petitioner received wages for his work with the NECA contractors. If, however, during the

4-year period following qualification as a journeyman lineman, petitioner worked for a nonunion contractor, petitioner would be required to repay the cost of his journeyman lineman training program.

In 2002, shortly after qualifying as a journeyman lineman, petitioner added his name to a list of union journeyman linemen available for work in the Boise area. Petitioner, however, continued to work in California as a union journeyman lineman until July 2004.

In August 2004, petitioner took a union job as a journeyman lineman in Idaho, and during the remainder of 2004 and into January 2005 petitioner worked in Idaho.

Petitioner paid Idaho State income taxes on the wages petitioner earned in California in 2001. Petitioner maintained an Idaho driver's license and an Idaho fishing license, but petitioner did not own any real property in Idaho.

On petitioner's 2001 Federal income tax return, petitioner deducted $27,294 as ordinary and necessary business expenses he had incurred in 2001 for travel, meals, and lodging relating to his training and his work in California. On audit, respondent disallowed all $27,294 as personal, nonbusiness expenses.

On their joint Federal income tax return for 2001, petitioner's parents did not report any rental income from petitioner. On their joint Federal income tax return for 2002,

petitioner's parents reported rental income from petitioner of $2,400.

OPINION

Under section 162(a)(2), a taxpayer is allowed a deduction for travel expenses, including meal and lodging expenses, if the expenses are ordinary and necessary, incurred while away from home, and incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). Respondent only challenges whether petitioner was "away from home" when he incurred the expenses in dispute.

The primary reason for the allowance of a deduction for travel expenses under section 162(a)(2) is to alleviate the burden on a taxpayer whose business needs require him to maintain two places of abode and to therefore incur duplicate living expenses. Kroll v. Commissioner, 49 T.C. 557, 562 (1968).

For purposes of section 162(a)(2), generally a taxpayer's "home" (or tax home) means the vicinity of the taxpayer's principal place of business or employment. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); see Coombs v. Commissioner, 608 F.2d 1269, 1275 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976). When different from the vicinity of his principal place of employment, a taxpayer's residence may be treated as his tax home if his principal place of business is "temporary", rather than "indefinite". See

Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958); Kroll v. Commissioner, supra at 562.

However, a taxpayer may be treated as an itinerant taxpayer, as never "away from home", and therefore as not entitled to travel expense deductions under section 162(a)(2). See James v. United States, 308 F.2d 204, 208 (9th Cir. 1962); Barone v. Commissioner, 85 T.C. 462, 465 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986).

In determining whether a taxpayer has a fixed tax home, courts consider three factors set forth in Rev. Rul. 73-529, 1973-2 C.B. 37, 38, as follows: (1) Whether there existed a business connection to the location of the alleged tax home, (2) whether duplicate living expenses were incurred while traveling and while maintaining the alleged tax home, and (3) whether personal connections existed to the alleged tax home. See Henderson v. Commissioner, 143 F.3d 497, 500 (9th Cir. 1998), affg. T.C. Memo. 1995-559.

This Court, as well as the U.S. Court of Appeals for the Ninth Circuit, requires that a taxpayer must have some business justification beyond merely personal reasons for maintaining an alleged tax home remote from a place of employment. See id.; Tucker v. Commissioner, 55 T.C. 783, 787 (1971). Where a taxpayer has no business connection to a remotely located alleged tax home, claimed section 162(a)(2) travel expense deductions

generally will be denied. See <u>Henderson v. Commissioner</u>, <u>supra</u> at 500; <u>Tucker v. Commissioner</u>, <u>supra</u> at 787.

Mere "hopes" of some day returning to an alleged tax home and finding employment, particularly where job opportunities are "bleak", is not sufficient to provide the necessary business connection to an alleged tax home. <u>Kaye v. Commissioner</u>, T.C. Memo. 1974-111; see <u>Tucker v. Commissioner</u>, <u>supra</u> at 786; <u>Wright v. Commissioner</u>, T.C. Memo. 1991-280; <u>Linn v. Commissioner</u>, T.C. Memo. 1984-324.

On the facts before us, we conclude that petitioner in 2001 did not have a reasonable business reason or justification for maintaining a tax home in Boise and that his visits to Boise in 2001 for approximately 45 days were not motivated by business reasons. In August 1999, petitioner enrolled in the journeyman lineman training program knowing that for the next 3-1/2 years he would be working with contractors only in California and/or Nevada. Petitioner acknowledged at trial that his employment prospects in Boise were not good in light of Idaho's right to work laws and petitioner's commitment to work only for union contractors for 4 years after the journeyman lineman training.

In 2001, petitioner's business connections to Boise were tenuous and preclude a finding that the room petitioner maintained in his parents' home was maintained for anything other than personal reasons.

In addition, the record does not establish that petitioner had "substantial continuing living expenses" in Boise that duplicated his travel expenses in California. See James v. United States, supra at 207-208; see Rev. Rul. 73-529, supra. No copies of checks, bank statements, or other documents were presented at trial that would indicate that petitioner in 2001 incurred significant Boise housing expenses in addition to his travel expenses in California, and petitioner's parents did not report any rental income on their 2001 return.

From 1999 to 2003, petitioner did not perform any work in Idaho, and petitioner earned all of his income from work in California. See Jeppsen v. Commissioner, T.C. Memo. 1978-343.

In Henderson v. Commissioner, supra, the U.S. Court of Appeals for the Ninth Circuit affirmed a Memorandum Opinion of this Court and found that a traveling stagehand spent personal time between jobs at his parents' home in Boise. Boise was not treated as the taxpayer's tax home because during the year in issue he had no business or employment connection to Boise, and he had no significant duplicate travel expenses. Despite ties to Boise (e.g., Idaho driver's license, payment of Idaho State income tax, bank accounts in Idaho, Idaho voter registration, and storage of belongings in his parents' home in Boise), we and the U.S. Court of Appeals for the Ninth Circuit denied the taxpayer's claimed business deductions for travel expenses. Id. at 498. In our Memorandum Opinion in Henderson we stated:

> In sum, we conclude that petitioner cannot claim that Boise, Idaho, was his home for the purposes of section 162(a)(2). While he did spend his idle time there, the source of his employment had no connection with Boise. Moreover, petitioner's minimal financial contribution to his parents' home does not lead to the conclusion that he incurred substantial, continuous, and duplicative expenses. [Henderson v. Commissioner, T.C. Memo. 1995-559; fn. ref. omitted.]

In light of petitioner's lack of business reasons for maintaining a tax home in Boise, petitioner's failure to incur substantial duplicate living expenses in Boise, and our decision and the decision of the U.S. Court of Appeals for the Ninth Circuit in Henderson, we conclude that in 2001 petitioner did not have a tax home in Boise, Idaho, for purposes of section 162(a)(2). Petitioner's claimed $27,294 in travel expense deductions is denied.

This case is decided on the preponderance of the evidence, and is unaffected by section 7491. See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

To reflect the foregoing,

Decision will be entered

for respondent.